Patrick BELL, Sr., Special Administrator of the Estate of Daniel Bell, Deceased, and in his own behalf, Alfonzo Bell, Doffer Bell, Eddie Bell, Ernest Bell, Henry Bell, Jimmy Bell, Joseph Bell, Lawrence Bell, Roosevelt Bell, Sylvia White Bell, and Walter Bell, Plaintiffs,

v.

CITY OF MILWAUKEE, Thomas Grady, Jr., Howard Johnson, John Doe, and Richard Roe (presently unknown), present or former law enforcement officers in the City of Milwaukee Police Department, individually and as former or present officers, Defendants.

Civ. A. No. 79–C–927.

United States District Court,
E. D. Wisconsin.

Oct. 20, 1980.

Thomas M. Jacobson, Curry First, Milwaukee, Wis., for plaintiffs.

Rudolph M. Konrad, Asst. City Atty., Milwaukee, Wis., for defendant City of Milwaukee.

Franklyn M. Gimbel, Milwaukee, Wis., for defendant Thomas Grady.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This action arises out of the fatal shooting of Daniel Bell on February 2, 1958. Daniel Bell was shot by defendant Thomas Grady, who at the time was a City of Milwaukee police officer. The action was commenced in October 1979 by Patrick Bell, Sr., who is the special administrator of the estates of Daniel Bell and Daniel Bell's father, Dolphus Bell; and by Daniel Bell's twelve surviving brothers and sisters. Named as defendants in addition to Grady are the City of Milwaukee, Howard Johnson who at the time of the shooting was the Chief of Police for the City of Milwaukee, and Edwin Shaffer who was in charge of the police department's investigation into Bell's death.

Currently before the court are the defendants' motions to dismiss the complaint.

The complaint sets forth the following facts which for the purposes of these motions must be taken as true. On the night of February 2, 1958, Grady and his partner, Louis Krause, were on patrol in the City of Milwaukee. At approximately 8:30 P.M., Grady stated that he needed more arrests and that he was going to arrest some "niggers." Shortly thereafter Grady stopped a car driven by Daniel Bell, a twenty-four year old black male. Grady had no cause to believe that Bell had broken any law or that there were any warrants outstanding for Bell's arrest.

As Grady approached the automobile, Bell jumped out of the automobile and began running down the street. Grady and Krause pursued Bell, repeatedly firing their service revolvers at him during the chase. After a few blocks Grady caught up with Bell and fatally shot him in the back of the neck. Then, in order to justify the shooting, Grady took a jackknife from his person and placed it in Bell's hand so that it would appear that the shooting was in self-defense. Plaintiffs allege that it was a common practice at the time for Milwaukee police officers to carry "throwaway" knives which could be planted on a body in order to justify the use of deadly force by a police officer.

The Daniel Bell shooting spurred both an internal police department investigation and an investigation by a Milwaukee County coroner's jury. The police department investigation was headed by Detective Sergeant Edwin Schaffer who reported directly to Chief of Police Howard Johnson. Plaintiffs make numerous allegations concerning the conduct of the police department investigation. Suffice it to say it is alleged that Shaffer, Johnson, and their subordinates concealed the true nature of the shooting in order not to damage the reputation of the Milwaukee Police Department. In the meantime the coroner's jury reached a verdict of justifiable homicide based in large part on the perjured testimony of defendant Grady.

The true facts of the Bell shooting might never have become known had not Grady's partner, Louis Krause, gone to the authorities with the real story in August 1979, over twenty years after the shooting. Based on Krause's story, Grady was convicted of homicide by reckless conduct and perjury and sentenced to seven years' imprisonment. This lawsuit was commenced shortly thereafter.

The defendants' motion to dismiss the amended complaint can be broken down

into four component parts. First, they argue that under Wisconsin law, the claims of Daniel Bell's estate did not survive the death of Daniel Bell. Second, they argue that Daniel Bell's brothers and sisters do not state a cognizable claim under the federal Civil Rights Act. Third, defendants argue that all of the claims are barred by the Wisconsin statute of limitations. Finally, they argue that the complaint fails to state a cognizable claim against the City of Milwaukee. These arguments will be discussed in the order outlined above.

1. *Survival of Daniel Bell's § 1983 Action.*

■ 42 U.S.C. § 1988 provides:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter [42 U.S.C. § 1983] * * * shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect: but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause * * * . * * * * * "

This provision means that in a § 1983 action where federal law is silent as to the resolution of a particular issue, the applicable law of the state in which the court sits will govern unless such law is inconsistent with the general purposes of § 1983. *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1979). Since § 1983 is silent as to the survival of actions, this Court is required to apply the Wisconsin law on the subject. *Moor v. County of Alameda*, 411 U.S. 693, 702–03, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973).

Before the law can be intelligently applied, however, it must first be determined exactly what claims may have accrued to Daniel Bell before his death. It is important to recognize that the estate may only litigate those claims which Daniel Bell could assert on his own behalf were he still alive.

The complaint reveals three possible claims under § 1983. First, Daniel Bell may have been subjected to an unlawful stop and seizure in violation of the Fourth and Fourteenth Amendments. Second, Bell may have been subject to invidious racial discrimination in violation of the equal protection clause of the Fourteenth Amendment. Finally, Bell may have been deprived of his Fifth and Fourteenth Amendment right to due process of the law by being subjected to excessive force in the course of an arrest. See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960); *Clark v. Ziedonis*, 513 F.2d 79 (7th Cir. 1975).

Section 895.01 of the Wisconsin Statutes provides that a claim for personal injuries survives the death of the person injured. As stated above, damages in such an action are limited to those suffered by the deceased before his death. *Prunty v. Schwantes*, 40 Wis.2d 418, 162 N.W.2d 34 (1968). It is true, as defendants point out, that no cause of action based solely on the death of the deceased survives. *Johnson v. Eau Claire*, 149 Wis. 194, 135 N.W. 481 (1912). Such an action may only be brought by the deceased's family on their own behalf under the Wisconsin wrongful death statute. § 895.04 Wis. Stats. The claims brought by Daniel Bell's estate, however, are not based on the fact of his death. Rather, the estate seeks to recover for the deprivations of Daniel Bell's civil rights which occurred before his death. These deprivations may fairly be characterized as injuries to the person and as such, under Wisconsin law, survive his death. Thus, the estate will be permitted to continue to litigate those claims.

2. *Claims of Daniel Bell's Brothers and Sisters*

In addition to the derivative claims of Daniel Bell's estate, Daniel Bell's brothers

and sisters have alleged a number of claims in their own right. These claims can be divided into two groups—those which arise from the death of Daniel Bell (brought under 42 U.S.C. §§ 1981 and 1983, and the Wisconsin wrongful death statute, § 895.04 Wis.Stats.), and those which arise from the alleged cover up of the true facts surrounding the death (brought pursuant to 42 U.S.C. §§ 1985 and 1986).

■ A § 1983 action may be based on the death of a relative if the relevant state wrongful death action would permit such an action. *Mattis v. Schnarr*, 502 F.2d 588 (8th Cir. 1974). Wisconsin law permits the brothers and sisters of the deceased to bring an action for pecuniary loss caused by his death, although the recovery of damages for loss of society and companionship is limited to the spouse, parents, or minor children. The defendants claim that the plaintiffs have made no claim for pecuniary damages resulting from Daniel Bell's death and that, accordingly, the claim is barred. Paragraphs 128 and 129 of the amended complaint, however, seek damages for funeral and related expenses, loss of services, and loss of prospective earnings and income. These are precisely the sort of pecuniary damages envisaged by the statute. *Harris v. Kelley*, 70 Wis.2d 242, 234 N.W.2d 628 (1975). While under Wisconsin law the brothers and sisters may not recover for loss of society and companionship, these damages are available to Patrick Bell, Sr., as special administrator of the estate of Dolphus Bell, Daniel Bell's father.

Defendants attack the claim of Bell's brothers and sisters for damages arising from the alleged conspiracy to cover up the true facts of the shooting on the ground that there is no federally protected right to a good name, citing *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). While defendants are correct as a general principle of law, their characterization of the claim is exceedingly narrow.

Bell's brothers and sisters have alleged the existence of a broadly based, racially motivated conspiracy designed to conceal the wrongful acts of a City of Milwaukee police officer. They allege that this conspiracy denied them the equal protection of the laws in that, unlike white citizens, the person responsible for the death of one of their relatives was not brought to justice. Due to this conspiracy, their brother was labelled a thief who was justifiably shot while attempting to evade a lawful arrest, and they were precluded from instituting a civil action to recover damages from the person who caused their brother's death.

■ 42 U.S.C. § 1985(2) permits a cause of action against any two or more persons who "conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws * * * *." The allegations of the amended complaint in this action, if true, amply establish a conspiracy to obstruct the due course of justice. When such a conspiracy is racially motivated, any person who is injured as a result may maintain a cause of action in the federal courts. *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979). Accordingly, Daniel Bell's brothers and sisters have stated a claim under the Civil Rights Act.

### 3. Statute of Limitations

■ In a federal civil rights action, all questions involving the applicable statute of limitations must be answered with reference to state law. *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Under Wisconsin law, a defendant is estopped from pleading the statute of limitations where his own fraudulent conduct has prevented the plaintiff from filing suit within the applicable time period. *Boehm v. Wheeler*, 65 Wis.2d 668, 681, 223 N.W.2d 536 (1974). In this case, plaintiffs have alleged that the defendants intentionally concealed the true facts concerning the death of Daniel Bell, thereby preventing them from obtaining the knowledge necessary to institute this lawsuit. Only when Louis Krause went to the authorities in August, 1978, were the true facts known. If the jury

finds these allegations to be true, the defendants will be estopped from arguing that the claims against them are time barred. At this stage of the proceedings, of course, the allegations of fraudulent concealment must be taken as true. Accordingly, the amended complaint may not be dismissed on the ground that the statute of limitations has expired.

4. *Claims Against the City of Milwaukee*

Defendants' final argument is that the amended complaint should be dismissed against the City of Milwaukee for failure to allege facts from which it could be inferred that the acts of the individual defendants were undertaken pursuant to an official policy, regulation, or custom as required by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants concede that the plaintiffs have alleged in their amended complaint that both the use of throwaway knives and the cover up of Daniel Bell's death were sanctioned by the policies and customs then followed by the City of Milwaukee Police Department. Defendants contend, however, that such allegations are conclusory and that it is necessary to allege specific facts from which the existence of the offending policies or customs can be inferred.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." It is well settled that the federal rules do not prohibit the pleading of legal conclusions as long as fair notice of the nature of the claim involved is given to the parties. Except in situations involving fraud, mistake, or a condition of mind (Rule 9(b)), it is not necessary to plead specific evidentiary facts in the complaint. As stated by the United States Supreme Court in *United States v. Employing Plasterers' Association of Chicago*, 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954):

" * * * [W]here a bona fide complaint is filed that charges every element necessary to recover, summary dismissal

of a civil case for failure to set out evidential facts can seldom be justified. If a party needs more facts, it has a right to call for them under Rule 12(e) of the Federal Rules of Civil Procedure. And any time a claim is frivolous an expensive full dress trial can be avoided by invoking the summary judgment procedure under Rule 56."

Having reviewed the allegations contained in the amended complaint, I am convinced that the plaintiffs have included every element necessary to establish liability on the part of the City. The specific evidentiary facts which underlie the claim will have to await development through discovery and trial. At this stage in the proceedings, the allegations are sufficient to withstand defendants' motion to dismiss the amended complaint.

IT IS THEREFORE ORDERED that defendants' motion to dismiss the amended complaint is hereby denied.