**Bobby L. WILLIAMS, Plaintiff,**

v.

**CITY OF CHICAGO, a Municipal corporation, and J. McKittuick, individually and in his official capacity as a police officer of the City of Chicago, Defendants.**

**No. 81 C 287.**

United States District Court,
N. D. Illinois, E. D.

Aug. 14, 1981.

As Amended Nov. 2, 1981.

William J. Parker, Timothy T. McLaughlin, Chicago, Ill., for plaintiff.

Laurence J. Rice, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

On August 2, 1979, defendant McKittuick, a Chicago police officer, stopped plaintiff Bobby Williams for a traffic violation. The defendant initiated a computerized warrant search. This was a routine police procedure. The warrant search revealed that an arrest warrant had been issued in the name of "Bobby Williams" for a series of parking violations. The parties now agree that the warrant did not apply to the plaintiff but to a different Bobby Williams.

When informed by Officer McKittuick of the warrant's existence, plaintiff immediately protested that he was a victim of mistaken identity. Though the complaint is vague on this point, plaintiff appears to allege that at the time of the arrest Officer McKittuick was aware of various pieces of information describing the wanted "Bobby Williams," all of which information conflicted with information the defendant had concerning plaintiff.[1] Plaintiff was nevertheless arrested and taken to a police lock-up. There he remained for seventy-two hours during which time the defendant City of Chicago allegedly "refused and/or thwarted efforts on the part of members of the plaintiff's family to post bond and obtain his release." Complaint ¶ 8. Eventually plaintiff was brought before a magistrate and released.

Claiming that both the original arrest and later denial of bail were unconstitutional, plaintiff now seeks damages from Officer McKittuick and the City. The defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. This motion is granted as to the allegations against the City. The motion is denied, however, as to the allegations concerning Officer McKittuick.[2]

### I. Original Arrest

The defendants vigorously contend that the initial arrest and detention were constitutionally proper, citing *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433

---

1. For example, neither the residence address nor the driver's license number of the wanted individual matched the corresponding information noted on plaintiff's driver's license.

2. During the pendency of this motion, plaintiff amended his complaint, adding in Count 2 a pendent state law claim of false arrest. The defendants' motion, of course, does not apply to this later-filed claim.

(1979). In *Baker*, the plaintiff was similarly taken into custody when a warrant search following a traffic citation informed the arresting officer of the existence of an outstanding warrant. In actuality, the warrant was intended for the plaintiff's brother. At the time of the brother's prior arrest, however, he had been carrying a copy of the plaintiff's driver's license, causing him to be booked under the plaintiff's name. Consequently, when the brother's bond was later revoked and the arrest warrant issued, the warrant, on its face, applied to the plaintiff. On these facts, the Supreme Court held that since the plaintiff was arrested pursuant to a facially valid warrant, his resulting eight-day detention was immune from constitutional attack.

Several courts have subsequently held that *Baker* forecloses any recovery on facts similar to those in this case. *See Johnson v. City of St. Paul*, 634 F.2d 1146, 1147 (8th Cir. 1980) (per curiam); *Lopez v. Modisitt*, 488 F.Supp. 1169, 1172 (W.D.Mich.1980); *Givens v. Tovo*, No. 79 C 1999 (N.D.Ill., Dec. 17, 1979). The question for this court is whether *Baker* applies to the facts in this case which are materially different from the facts in *Baker*.

There is language in the *Baker* opinion suggesting that plaintiff Williams has no claim. "The Constitution," wrote Justice Rehnquist, "does not guarantee that only the guilty will be arrested." 443 U.S. 137 at 145, 99 S.Ct. 2689 at 2695, 61 L.Ed.2d 433. More specifically,

> given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to independently investigate every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.

*Id.* at 145–6, 99 S.Ct. at 2695. Justice Rehnquist in addition specifically disparaged the lower court's claim "that the sheriff or arresting officer has a duty to exercise due diligence in making sure that the person arrested and detained is actually the person sought under the warrant and not merely someone of the same or similar name." *McCollan v. Tate*, 575 F.2d 509, 513 (5th Cir. 1978). Such a contention, Justice Rehnquist argued, sounds in tort and not constitutional law. *Baker, supra*, 443 U.S. at 146, 99 S.Ct. at 2695.

These statements, however, are best viewed as pure dictum. For in *Baker*, all that was challenged was a detaining authority's failure to investigate an already incarcerated plaintiff's claim of mistaken identity. Both sides in *Baker* conceded that the initial arrest itself was proper. And indeed it was given that the arrest warrant there in issue actually did order the plaintiff's arrest. The *Baker* arrest, in other words, was simply the product of a proper execution of a valid warrant. Here, by contrast, there was a valid warrant but it did not command the arrest of plaintiff Williams. The warrant applied to another person. The plaintiff was not arrested "pursuant" to a valid warrant for his arrest.

■ This is not to say that Officer McKittuick is necessarily liable, for policemen do not make arrests at their absolute peril. On the contrary, all the above analysis indicates is that this arrest was not made "pursuant" to a warrant. Rather, it was warrantless and thus constitutional only if made with probable cause. *Meiners v. Moriarity*, 563 F.2d 343, 348 (7th Cir. 1977). Officer McKittuick's liability, in short, turns on whether or not he had probable cause to arrest plaintiff.[3] His motion to dismiss can accordingly be granted only if plaintiff has alleged no set of facts pointing to a lack of probable cause. On these allegations, such a conclusion could in turn be reached solely by holding that policemen are always entitled to arrest those whose names match the title listed on an arrest

---

**3.** Of course, even if plaintiff eventually establishes a lack of probable cause, Officer McKittuick can still avoid damages by making out the affirmative defense of good faith. *See Bru-*

*baker v. King*, 505 F.2d 534, 536–7 (7th Cir. 1974). As of yet, however, no such defense has been asserted.

warrant. Yet, surely an officer cannot look simply at names and disregard all other pertinent information. At some point, an arrest becomes unconstitutionally unreasonable when made in the face of known discrepancies between a suspect's characteristics and those of a similarly-named fugitive. I cannot now say with certainty, taking the plaintiff's allegations as true, that this point has not been reached in this case. The motion to dismiss the charges against Officer McKittuick, therefore, is denied.

■ The City of Chicago's liability for these acts poses different questions. Under the now familiar teaching of *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a city is liable for the constitutional torts of its agents when

> the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, ... [a city] may be sued for constitutional deprivation visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels.

*Id.* 436 U.S. at 690–1, 98 S.Ct. at 2035–36. Plaintiff has not alleged that the City has enacted a formal policy favoring mistaken arrests. Rather he has claimed that a *de facto* policy or custom can be inferred from the behavior of City officials:

> The mistaken arrest of the plaintiff was the proximate result of a policy or procedure of the City of Chicago wherein members of its police force are given inadequate information for the purpose of properly identifying motorists for [whom] outstanding warrants exist, and wherein improper procedural guidelines are set for the proper identification of such offenders before they are arrested and incarcerated.

Complaint ¶ 9. What is most striking about these allegations is the absence of any claim

of prior incidents. Williams has not alleged that a policy or custom can be inferred from the City's acquiescence in a prior pattern of similar police misconduct. At least two judges of this District have argued that for this reason alone, the City's motion must be granted, that *de facto* municipal liability under Section 1983 can never exist independent of such acquiescence. *Hamrick v. Lewis*, 515 F.Supp. 983, 986 (N.D.Ill. 1981) (Aspen, J.); *Gomez v. City of West Chicago*, 506 F.Supp. 1241, 1245 (N.D.Ill. 1981) (Aspen, J.); *Magayanes v. City of Chicago*, 496 F.Supp. 812, 814 (1981) (Shadur, J.); *accord, Popow v. City of Margate*, 476 F.Supp. 1237, 1246 (D.N.J.1979); *but see Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980); *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Leite v. City of Providence*, 463 F.Supp. 585, 590–1 (D.R.I.1978).

However, plaintiff's theories of municipal liability suffer from additional deficiencies unique to this litigation. Plaintiff essentially asserts two reasons why the City should be held responsible for his mistaken arrest: (1) the City fails to provide arresting officers with sufficient information upon which to make accurate identifications; (2) the City fails to train its officers to react properly to a situation like that which confronted Officer McKittuick.

Plaintiff's first argument seems to run directly counter to his prior allegation that Officer McKittuick acted unreasonably in the face of available and sufficient identifying information. Plaintiff is apparently therefore attempting to plead in the alternative. *See* Fed.R.Civ.P. 8(e)(2). He seems, in short, to be arguing that the City's alleged policy in favor of mistaken arrests is evidenced by the fact that it provides its arresting officers solely with a fugitive's name, address, and driver's license number,[4] the inference being that officers cannot reasonably be expected to make proper judgments on the basis of such

---

4. These are the only pieces of information plaintiff alleges were before Officer McKittuick

at the time of plaintiff's arrest. Complaint ¶ 7.

allegedly scant information. Recently I had occasion to canvass the case law which has grown out of *Monell.* My conclusion was that to be actionable under Section 1983, municipal inaction must be "reckless, defined here to mean inaction which has created a substantial probability that undesirable subordinate behavior will manifest itself in increased and significant amounts." *Spriggs v. City of Chicago,* 523 F.Supp. 138 at 143 (N.D.Ill.1981). The question for the court in this case is thus whether the City's alleged failure to transmit information over and above that which it sent Officer McKittuick created a "substantial probability that undesirable subordinate behavior [would] manifest itself in increased and significant amounts."

Under this analysis, plaintiff's failure to allege prior incidents of a similar nature is especially instructive. I cannot agree that inaction of the nature alleged by plaintiff falls within the ambit of *Monell.* Given the amount of information the police department concededly furnishes to its officers, the chances of mistaken arrests of the sort alleged by plaintiff are not sufficiently great. *But see Baker, supra,* 443 U.S. at 155–6, 99 S.Ct. at 2700–01 (Stevens, J., dissenting).

Plaintiff's argument that the City fails to train its police officers lacks substance for a similar reason. Here, too, the question is whether such inaction has created a "substantial probability" of numerous mistaken arrests. In answering this inquiry, it must be borne in mind that plaintiff has not alleged a complete failure by the City to instruct its officers in the general law and practice of warrantless arrests. On the contrary, all the plaintiff is essentially alleging is a failure to teach the manner in which its officers should apply these principles to an infrequently occurring fact situation. Surely this type of "failure" cannot

provide a basis for holding a city liable. Even if a municipality earnestly desires to offer its policemen the most comprehensive training conceivable, it would be literally impossible for police instructors to anticipate each and every fact situation that might confront an arresting officer. More importantly, I do not believe that a "substantial probability" of misconduct in a given fact pattern is created simply by an instructor's failure to make use of that example when explicating a general topic of discussion. To conclude otherwise, one must believe that police officers are incapable of independently applying the general to the specific. Since I reject this proposition, I reject as well plaintiff's theory of municipal liability. The motion to dismiss is granted insofar as it pertains to the charges against the City of Chicago arising out of the initial arrest.

## II. *Bail Denial*

Only the City is claimed to be responsible for the bail denial; no charges are made against any individual officer or agent.[5] As a result, plaintiff's allegations consist solely of this paragraph:

> The length of Plaintiff's illegal and improper incarceration was the proximate result of a policy of the police department of the City of Chicago to deliberately delay the occasion of bringing arrestees before a Magistrate and [to thwart] efforts by and on behalf of arrestees to secure release by posting of adequate bond.

Complaint ¶ 10. The issue here is whether such a conclusory attempt to comply with *Monell* can survive a motion to dismiss.

■ In *Spriggs* I concluded that the Seventh Circuit had rejected the argument that strict fact pleading is called for in the *Monell* context. Rather I held that under

---

**5.** Plaintiff does allege that Officer McKittuick "caused him to be incarcerated without being brought before a Magistrate for at least seventy-two (72) hours." Complaint ¶ 7. I read this sentence as merely claiming that defendant McKittuick was the initial instrument of plaintiff's incarceration. I do not view in the allegation a charge that McKittuick had any involvement in this matter following the time he initially transported plaintiff to the police station. To the extent I misread this sentence, i. e., to the extent plaintiff indeed intended to charge such later involvement, I grant the defendants' motion with respect to this charge. Plaintiff's claim is much too conclusory to withstand challenge.

*Murray v. City of Chicago,* 634 F.2d 365 (7th Cir. 1980), a plaintiff need do *no more* than spell out "the skeletal outlines of a viable theory of municipal culpability." *Spriggs v. City of Chicago, supra,* 523 F.Supp. at 145. The instant complaint does not reach this level. It simply contains the assertion that somewhere and somehow a culpable policy has been hatched. While there is some precedent for the proposition that this is enough, *Villa v. Franzen,* 511 F.Supp. 231, 235 (N.D.Ill.1981); *Thompson v. Village of Evergreen Park, Ill.,* 503 F.Supp. 251, 252 (N.D.Ill.1980), I believe the better view to be Judge Aspen's:

> [A] section 1983 plaintiff must do more than merely parrot the language of *Monell* or copy conclusory language from assorted courts in which *Monell*-type claims have been upheld ...

*Hamrick v. Lewis, supra,* 515 F.Supp. at 986; *accord, Cohen v. Illinois Institute of Technology,* 581 F.2d 658, 663 (7th Cir. 1978), *cert. denied,* 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979) ("a pleading is insufficient to state a claim under the Civil Rights Act if the allegations are mere conclusions."). Allegations such as plaintiff's do not fulfill "the function of pleadings under the Federal Rules [which] is to give *fair notice* of the claim asserted so as to enable the adverse party to answer and prepare for trial ...." 2A Moore's Federal Practice ¶ 8.13 (2d ed. 1980) (emphasis in original). Thus, "[i]t is not enough to indicate that the plaintiff has a grievance[;] sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery." *Id.*

In summary, the pleading standard which this court used in its opinion in *Spriggs v. City of Chicago, supra,* is both a ceiling *and* a floor. Having failed to meet this minimum level, plaintiff's bail denial claim against the City is dismissed.

### III. *Conclusion*

The defendants' motion to dismiss is denied insofar as it applies to plaintiff's claims against Officer McKittuick concern-

ing the August 2, 1979 arrest. In all other respects it is granted.