Cheryl MEANS, Administratrix of the
Estate of Gary Lee,
deceased, Plaintiff,

v.

The CITY OF CHICAGO, et
al., Defendants.

No. 81 C 2988.

United States District Court,
N. D. Illinois, E. D.

March 1, 1982.

G. Flint Taylor, Peter Schmiedel, Chicago, Ill., for plaintiff.

Jennifer Duncan-Brice, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Plaintiff Cheryl Means, as administratrix of the estate of Gary Lee, has brought this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, 1988 (1976) alleging that defendants City of Chicago, Richard Brzeczek, Superintendent of Police, Frank Nolan, Director of the Office of Professional Standards, and six individual police officers,[1] deprived Gary Lee of his life without due process of law in violation of the fifth, eighth, thirteenth and fourteenth amendments to the United States Constitution. Defendant City of Chicago and the individual defendants have presented separate motions to dismiss all or various counts of the complaint for failure to state a claim upon which relief can be granted. *See* Fed.R. Civ.P. 12(b)(6).

---

1. The individual defendants are officers Cornelius Morgan, Robert Healy, Walter Kupetis, Richard Gesiorski, G. Lindsay and H. Keeler.

## Facts ·

The complaint alleges that on January 14, 1981, defendant police officers Morgan and Healy stopped and arrested Gary Lee without probable cause or other justification and subsequently, without provocation, shot him in the head and killed him. Complaint ¶¶ 14, 15. Further, it alleges that Morgan and Healy and four other named police officers "improperly" delayed Lee's transportation for receipt of medical attention, proximately causing his death, Complaint ¶¶ 16, 19, and engaged in a conspiracy consisting of the false arrest, unjustified shooting, failure to provide medical attention and attempting to cover up the alleged events after the fact. Complaint ¶¶ 21–24.

Plaintiff additionally alleges that the City of Chicago, its police superintendent and director of professional standards, by their written and de facto policies, regulations, practices and customs of improperly hiring, screening and training officers, by failing to discipline these officers for past misconduct, and by encouraging officers to use deadly or excessive force, proximately caused the death of Gary Lee. Complaint ¶¶ 27, 29–31. Finally, plaintiff states three pendant state claims for wrongful death against the individual police officers, for respondeat superior liability against the City and the supervisory defendants for that wrongful death, and against the City directly for negligently entrusting and retaining the individual officers. For each of these acts the plaintiff seeks compensatory and punitive damages.

## § 1983 Claims

The City of Chicago moves to dismiss the § 1983 claims against it on the grounds that the claims lack specificity and fail to state a causal link between the alleged conduct of the City and the decedent's death. It is well settled that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

The starting point for judging potential liability of a municipality under § 1983 is *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), where the Supreme Court held that a city was a "person" for the purpose of the statute but rejected traditional concepts of vicarious liability based upon the tortious acts of an employee. 436 U.S. at 690–94, 98 S.Ct. at 2035–37. The liability of a city must rest on the city's conduct, i.e., an official policy, custom or practice which is causally linked to the conduct of the employee and the resulting injury to the plaintiff. *Id. See also Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981); *Murray v. City of Chicago*, 634 F.2d 365, 366–67 (7th Cir. 1980). Thus the theory of liability put forward by the plaintiff must be based on the actions of the City rather than the concept of respondeat superior. *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36. *See also Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1975).

In the instant case there is no question that plaintiff alleges deprivation of Gary Lee's constitutionally protected right to life. But the City argues that plaintiff does not state with sufficient particularity any policy, practice or custom of the City which was the proximate cause of that deprivation. We disagree.

There are a number of cases which recognize that allegations of a general failure to train, supervise and control law enforcement officials are sufficient to state a claim against a municipality and sustain a verdict if evidence is adduced sufficient to prove the general failure and that it was a proximate cause of the injury complained of. *See Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982); *Herrera v. Valentine*, 653 F.2d 1220, 1224–25 (8th Cir. 1981); *Turpin v. Mailet*, 619 F.2d 196 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979); *Owens v. Haas*, 601 F.2d 1242 (2d Cir.), *cert. denied* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407

(1979); *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976); *Smith v. Hill*, 510 F.Supp. 767 (D.Utah 1980); *Edmonds v. Dillon*, 485 F.Supp. 722 (N.D.Ohio 1980); *Wilkenson v. Ellis*, 484 F.Supp. 1072 (E.D.Pa.1980); *Popow v. City of Margate*, 476 F.Supp. 1237 (D.N.J.1979); *Cook v. City of Miami*, 464 F.Supp. 737 (S.D.Fla.1979); *Leite v. City of Providence*, 463 F.Supp. 585 (D.R.I.1978).

The City relies on a number of unpublished opinions in this district asserting that allegations of a single unconstitutional act are insufficient to state a claim against a municipality.[2] There is substantial disagreement in this district over what level of specificity in pleading is required under § 1983. *Compare Villa v. Franzen*, 511 F.Supp. 231, 232, 235 (N.D.Ill.1981) and *Thompson v. Village of Evergreen*, 503 F.Supp. 251, 252 (N.D.Ill.1980); *with Williams v. City of Chicago*, 525 F.Supp. 85 (N.D.Ill.1981) and *Spriggs v. City of Chicago*, 523 F.Supp. 138 (N.D.Ill.1981) and *Hamrick v. Lewis*, 515 F.Supp. 983 (N.D.Ill.1981). Certain of our colleagues have held that allegations of an unconstitutional policy on the part of a municipality are not adequate unless they are supported by particular factual allegations which demonstrate that the alleged conduct is more than an isolated incident. *See Williams*, 525 F.Supp. at 90; *Thedford v. Joyce*, No. 79 C 3061 (N.D.Ill. July 8, 1980). *See also Smith v. Ambrogio*, 456 F.Supp. 1130 (D.Conn.1978). But the teaching of the Supreme Court in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 611 (1957) and the pleading concepts of Fed.R.Civ.P. 8(a) are no less applicable to § 1983 actions than to any other lawsuit. As the Court in *Conley* stated:

> The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his

claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. 355 U.S. at 45–46, 78 S.Ct. at 101–102.

It is true that the requirement of a policy on which to predicate liability of a municipality under *Monell* can be easily alleged by a plaintiff. But Rule 8(a) does not distinguish between different types of claims. Cf. Rule 9(g). We are in agreement with the comments of our colleague Judge Shadur concerning the apparent distinction between the federal rules and the strict pleading requirements imposed by some opinions in § 1983 cases:

> [S]uch judicial legislation [is] difficult to reconcile with the mandates of Rule 8(a) and such cases as *Conley*. When a requirement of specific allegations is needed, the Rules know how to impose it—see Rule 9(b), requiring particularity as to the circumstances constituting fraud or mistake, and Rule 9(g), requiring specific statements of items of special damages. There is a necessary negative implication from a failure to specify a comparable requirement for Section 1983 cases—and certainly the rules do not so specify. *Thompson v. Village of Evergreen Park*, 503 F.Supp. at 252.

This is not to say that simply reciting that the actions of an individual employee were pursuant to the "policies, customs and usages" of the City is sufficient to state a claim under the statute. The plaintiff must allege what the policy is that is being challenged and demonstrate that it may, under some set of facts, be a proximate cause of the injury in the particular case. (See discussion *infra*.) But the test is not whether the plaintiff has pleaded factual instances demonstrating that an unconstitutional policy exists, but rather whether the policy, custom or practice, once pleaded, can be proved. *See Murray v. City of Chicago*, 634

---

**2.** The opinions relied on by defendant are *Brewer v. City of Chicago*, No. 77 C 4344 (N.D. Ill. Sept. 4, 1980); *Clinard v. Young*, No. 80 C 4495 (N.D.Ill. April 15, 1981); *Thedford v.*

*Joyce*, No. 79 C 3061 (N.D.Ill. July 8, 1980); *Cedeno v. Doe*, No. 78 C 2685 (N.D.Ill. Nov. 30, 1978); *Bond v. City of Chicago*, No. 71 C 2731 (N.D.Ill. Feb. 17, 1972).

F.2d at 367 ("If plaintiff succeeds in proving her allegation that similar unwarranted arrests have occurred frequently, to the knowledge of the parties involved, it might be possible to show dereliction of duty of constitutional dimension upon the part of the responsible officials.").

■ The instant case is instructive as to why the allegation of a particular policy is sufficient without insisting on particularized allegations of underlying facts. Plaintiff alleges, in what some might term simply "conclusory" allegations, that the City failed to train adequately the officers in question and police officers generally, failed to supervise and control their actions, and failed adequately to discipline them for past misconduct thereby encouraging the use of excessive force in the future. The complaint details the facts of only the instant incident. However, it clearly contemplates proof of more than this incident in order to prove the alleged policy; it contemplates proof of numerous instances of misconduct upon which the City failed to act. The law is clear that if plaintiff can establish that "senior supervisory personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive act." *Herrera v. Valentine*, 653 F.2d at 1224 *quoting Turpin v. Mailet*, 619 F.2d at 201. *See also McClelland v. Facteau*, 610 F.2d at 697; *Owens v. Haas*, 601 F.2d at 1246; *Popow v. City of Margate*, 476 F.Supp. at 1246–47.

In support of its motion the City has submitted evidentiary materials intended to show that it has acted on complaints against these officers. The materials disclose that defendant Morgan, the alleged shooter in this case, has had twenty-nine complaints of misconduct filed against him since 1961, six of which were "sustained" with the most severe sanction being a five-day suspension. The remaining individual defendants have had between six and fourteen complaints lodged against them during various periods of service. Defendants' Memorandum in Support of Motion To Dismiss, Ex. F–K. It is elementary that on a motion to dismiss the allegations of the complaint must be taken as true and cannot be controverted by factual assertions. *See Powe v. City of Chicago*, 664 F.2d at 642. Moreover, the records submitted by defendant are not dispositive of plaintiff's charge of failure to supervise and discipline. It is the failure of the City to act on the allegations of misconduct which, in part, forms the basis of plaintiff's complaint. Instead of answering that charge, the evidence submitted by the City raises questions of fact as to whether its method of responding to complaints of misconduct amount to a policy which encourages or tacitly authorizes further unconstitutional acts.[3]

Furthermore, the evidentiary materials submitted by the City point up the shortsightedness of its fact pleading position. Absent the inclusion of the officers' records in the motion to dismiss, plaintiff lacked the information necessary to identify specific instances of failure to discipline which form a part of the basis for her allegations of official policy. We are at a loss as to how any plaintiff, including a civil rights plaintiff, is supposed to allege with specificity prior to discovery acts to which he or she personally was not exposed, but which provide evidence necessary to sustain the plaintiff's claim, i.e., that there was an official policy or a *de facto* custom which violated the Constitution. Thus, under our reading

---

**3.** We are not certain on what theory defendant wishes us to credit the determinations made by the Police Department Office of Professional Standards (OPS) on the issue of adequate supervision and discipline. Apparently the City desires that its determination be given some type of res judicata effect which would preclude plaintiff from contesting the claims of misconduct once an OPS determination has been made. Clearly the internal decision made by OPS is not a judicial or other action entitled to a res judicata effect. The City may be entitled to submit its OPS records as evidence to rebut plaintiff's claim of an unconstitutional policy, but whether that evidence is sufficient to establish a defense or will be persuasive in that regard is a question left for another day.

of the federal rules and the Court's opinion in *Monell*, a claim under § 1983 must allege a particular policy or practice which violates the Constitution and was a proximate cause of the injury sustained in the given case, but it need not allege the particular events which when taken together evidence that policy or practice. The particulars will await discovery, motions for summary judgment and trial.[4]

█ The allegations of failure to train and supervise police officers are likewise sufficient to withstand a motion to dismiss. *See Owens v. Haas*, 601 F.2d at 1246; *Sims v. Adams*, 537 F.2d at 832; *Smith v. Hill*, 510 F.Supp. at 771; *Leite v. City of Providence*, 463 F.Supp. at 589–591. There is substantial disagreement over what standard of culpability plaintiff must allege and prove to establish that the municipality violated § 1983. Some courts have held that a showing of mere negligence is sufficient to support a verdict,[5] but the weight of authority is that some greater degree of culpability is required.[6] It has been settled law in this circuit for several years that negligence is not a sufficient basis for a claim under § 1983. *Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976) (en banc), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). When first confronted with the question, the Supreme Court declined to decide whether negligence is sufficient to sustain a claim under the statute. *See Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). In *Parratt v. Taylor*, 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) however, the Court suggested the possibility of such claims:

> Nothing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights .... Section 1983 unlike its criminal counterpart, 18 U.S.C.

4. Nothing we have said here is inconsistent with the recent Seventh Circuit decision in *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981). The complaint in *Powe* alleged a series of illegal arrests against the same individual. However, unlike the instant case, the complaint stated no specific unconstitutional policy. The court held that this failure was not dispositive:

> Thus, that Powe's complaint does not point to a specific policy of the city or the county is not fatal to his claim. His complaint will withstand dismissal if the facts alleged, together with reasonable inferences to be drawn from them, could lead a reasonable factfinder to conclude that the actions of the county and city employees, by which Powe was unconstitutionally deprived of his liberty, were the product of some policy or custom of the municipal entities. 664 F.2d at 650.

The court went on to state that where no specific policy is alleged, pleading a single instance of unconstitutional conduct on the part of an employee will not support an inference that some policy exists. *Id. See also Sterling v. Village of Maywood*, 579 F.2d 1350 (7th Cir. 1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979). We do not argue with this conclusion. But the case at bar does not require any inference to be drawn from specific facts; unlike *Powe*, here the unconstitutional policy is clearly alleged on the face of the complaint. It is plaintiff's burden to prove the allegations. The presence of specific allegations of policy distinguishes this case from several cited by the defendant. *See Brewer v. City of Chicago, supra,* slip op. at 2.

5. Cases holding that an allegation of negligence may be enough to sustain a complaint under § 1983 include *Navarette v. Enomoto*, 536 F.2d 277 (9th Cir. 1976), *rev'd on other grounds sub nom., Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Roberts v. Williams*, 456 F.2d 819 (5th Cir. 1971), *cert. denied*, 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1972); *McCray v. Maryland*, 456 F.2d 1 (4th Cir. 1968); *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968), *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969); *Carter v. Carlson*, 447 F.2d 358 (D.C.Cir.1971), *rev'd on other grounds sub nom., Dist. of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Norton v. Mckeon*, 444 F.Supp. 384 (E.D.Pa.1977), *aff'd*, 601 F.2d 575 (3d Cir. 1979). The cases cited above are pre-*Monell* and thus do not involve charges against a municipality under § 1983.

6. *See e.g., McClelland v. Facteau*, 610 F.2d at 696; *Owens v. Haas*, 601 F.2d at 1246; *White v. Rochford*, 592 F.2d 381, 385 (7th Cir. 1979); *McDonald v. Illinois*, 557 F.2d 596, 601 (7th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977); *Williams v. Vincent*, 508 F.2d 541, 546 n.11 (2d Cir. 1974); *Spriggs v. City of Chicago*, 523 F.Supp. at 142–43; *Jones v. City of Philadelphia*, 491 F.Supp. 284, 287 (E.D.Pa.1980); *Popow v. City of Margate*, 476 F.Supp. at 1244; *Leite v. City of Providence*, 463 F.Supp. at 588–91.

§ 242, has never been found by this Court to contain a state of mind requirement, ... § 1983 affords a "civil remedy" for deprivations of federally protected rights caused by persons acting under color of state law without any express requirement of a particular state of mind. 101 S.Ct. at 1912–13 (citations omitted).

Even after *Parratt* some courts have continued to hold that mere negligence in training and supervision does not state a claim under a *Monell* policy theory. *See Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982); *Spriggs v. City of Chicago*, 523 F.Supp. at 142–143. We question whether the cases holding that more than negligence is required to state a claim against a municipality under § 1983 survive the reasoning and language of *Parratt* indicating that state of mind is not an element in § 1983 claims, but we need not decide that question here. The complaint does not allege a specific level of incompetence on the part of the City. It can, however, be fairly construed to include an allegation of gross misconduct, recklessness, and even affirmative encouragement on the part of the City which led to the death of Gary Lee. *See Smith v. Hill*, 510 F.Supp. at 775. As this court has stated elsewhere, we hope that before the evidence is presented, either on a motion for summary judgment or at trial, this circuit or the Supreme Court will clarify the impact of *Parratt* on the availability of § 1983 remedies for a plaintiff injured by negligent state action. *See Cruz v. Bilandic*, No. 77 C 2179, slip op. at 4 (N.D.Ill. August 28, 1981). At this stage, however, plaintiff is entitled to proceed to discovery

to attempt to prove her claim against the City. *See Murray v. City of Chicago*, 634 F.2d at 366.

█ The final argument made by the City is that regardless of the general state of the law on municipal liability stemming from a failure to train, supervise and/or control its agents, such actions could not have been the proximate cause of Gary Lee's death given the allegation against the individual officers in this case. Defendant's argument has some merit. Plaintiff alleges that officers Morgan and Healy "without legal justification and without provocation of Gary Lee did shoot him in the head." Complaint ¶¶ 14, 15. Thus the complaint alleges an intentional act on the part of the individual officers. As we have previously stated, as to the City the plaintiff must show that a policy or practice of the City was a proximate cause of Lee's death. *Rizzo v. Goode*, 423 U.S. at 375–76, 96 S.Ct. at 606–07. It may be difficult to demonstrate that the City's conduct was a proximate cause of the injury where there is an intervening intentional act by another party. We disagree, however, with the City's contention that a municipality can never be liable on a *Monell* claim where there has been an intentional act by one of its employees. The cases cited above recognize that even where the employee's action is intentional, the municipality can be liable if the facts adduced at trial prove a policy, custom or practice amounting to, at the very least, authorization, "deliberate indifference" or gross neglect of a legal duty owed to the plaintiff.[7]

---

7. Our decision that the City can be held liable for decedent's death even if the acts of the individual officers are found to be intentional wrongs is supported by notions from tort law upon which § 1983 draws. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). While it is the general rule that someone cannot be liable for the injury to another where there is an intentional intervening act by a third party,

[t]here are, however, other situations, in which either a special responsibility resting upon the defendant for the protection of the plaintiff, or an especial temptation and opportunity for criminal misconduct, brought

about by the defendant, will call upon him to take precautions against it. The responsibility ... may be founded upon some relation existing between the parties, such as ... employer and employee, landlord, and no doubt others. W. Prosser, *Law of Torts* § 33 at 174 (4th Ed. 1971).

In particular, landlords have been held liable where circumstances indicate a special danger to tenants posed by lack of physical security on rental premises, *see Kline v. 1500 Massachusetts Ave.*, 439 F.2d 477 (D.C.Cir.1970); *Braitman v. Overlook Terrace Corp.*, 68 N.J. 368, 346 A.2d 76 (1975); *Ramsay v. Morrisette Realty Co.*, 252 A.2d 509 (D.C.1969), and, perhaps

We caution the plaintiff, however, that the relevance of policy evidence will be judged by the relationship between the alleged policy and the conduct of the individual officers. Thus while evidence of a failure to train in the use of a firearm might be relevant to a charge of negligent use of a weapon, it has no relevance to a charge of a deliberate shooting. Similarly while evidence of a failure to provide crowd control training might be relevant to a charge of overreaction to crowd hostility, it would have no bearing on an incident involving a single victim. In short, the complaint, though legally sufficient, does not authorize the plaintiff to try generally the City and its police department. We are guided by the relationship between § 1983 and traditional notions of tort law, see *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Only such "policies, customs and practices" which can legally be said to be a proximate cause of Gary Lee's death are relevant.

■ The supervisory defendants, Superintendent Brzeczek and Director Nolan, have also moved to dismiss the § 1983 claims against them on the grounds that they fail to state a claim. These motions must likewise be denied. These defendants, like the City, can only be held liable under § 1983 for their direct action and not as a result of their supervisory capacity alone. *See Murray v. City of Chicago*, 634 F.2d at 367 (Swygert, J. concurring); *Mayes v. Elrod*, 470 F.Supp. 1188, 1194 (N.D.Ill.1979). The complaint, however, clearly alleges that Brzeczek and Nolan were personally responsible for the development of the policies in question, had knowledge of them, and that their actions or their failure to act caused the death of Gary Lee. Such allegations are sufficient to withstand a motion to dismiss. *Id. See also McClelland v. Facteau*, 610 F.2d at 696–97; *Wilkenson v. Ellis*, 484 F.Supp. at 1086–87, 1090–91; *Cook v. City of Miami*, 464 F.Supp. at 739.

more to the point, employers can be held directly liable under the theory of negligent entrustment where their employees injure a third party, *see Becken v. Manpower, Inc.*, 532 F.2d 56 (7th Cir. 1976); *Easley v. Apollo Detective*

*Conspiracy Claim*

Count II of the complaint alleges a conspiracy on the part of the six individual police officers to violate decedent's constitutional rights and rights under 42 U.S.C. §§ 1981, 1983, 1985. The officers have moved to dismiss this count on the grounds that it is conclusory and fails to state a claim.

■ "A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damages.'" *Hampton v. Hanrahan*, 600 F.2d 600, 620–21 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), *quoting Rotermund v. United States Steel Corp.*, 474 F.2d 1139 (8th Cir. 1973) (citations omitted). Plaintiff must establish that each defendant was aware of a single plan and its essential nature and scope, though not necessarily all of its details and objectives. *Id.* It is well recognized that given the difficulty of proving the existence of an agreement, circumstantial evidence may provide adequate proof so long as it is sufficient to infer that the alleged conspirators had a "meeting of the minds" and reached an understanding to achieve the illegal objective. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). *See also Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971). As a general rule "[t]he existence or non-existence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide." *Adickes*, 398 U.S. at 176, 90 S.Ct. at 1618 (Black, J. concurring).

■ Plaintiff alleges that the officers acted in concert or otherwise agreed to de-

*Agency, Inc.*, 69 Ill.App.3d 920, 26 Ill.Dec. 313, 387 N.E.2d 1241 (1st Dist. 1979); *Rosenberg v. Packerland Packing Co., Inc.*, 55 Ill.App.3d 959, 13 Ill.Dec. 208, 370 N.E.2d 1235 (1st Dist. 1977).

prive Gary Lee of his life without due process of law and on the basis of his race. Complaint ¶¶ 21, 22. In furtherance of that scheme plaintiff alleges the unjustified stop/arrest, the subsequent shooting, intentional delay in providing medical treatment, and a cover-up of the events by the officers. Complaint ¶ 24. The cover-up is alleged with particularity: that defendants fabricated a story that decedent possessed a weapon and attacked officer Morgan, published this story in official documents and to the media, and provided false evidence. Complaint ¶ 17.

There is no question that the complaint is sufficient to allege a conspiracy between Officers Morgan and Healy who participated in the arrest, shooting and alleged cover-up. However, the other officers are not alleged to have come on the scene until after the shooting. The complaint appears not to contemplate any proof of an agreement prior to the incident in question. Defendants correctly point out that to state a conspiracy in violation of the civil rights of Gary Lee, plaintiff must prove an agreement while he was still alive. The civil rights of a deceased cannot be violated because subsequent to his death he is not a "person" within the meaning of the statute. See *Guyton v. Phillips*, 606 F.2d 248, 250 (9th Cir. 1979), *cert. denied*, 445 U.S. 916, 100 S.Ct. 1276, 63 L.Ed.2d 600 (1980); *Silkwood v. Kerr-McGee*, 637 F.2d 743 (10th Cir. 1980); *Whitehurst v. Wright*, 592 F.2d 834 (5th Cir. 1979). Proof of the cover-up alone would not be sufficient to sustain a claim. *Hampton v. Hanrahan*, 600 F.2d at 622. But the complaint in this case does allege that the four officers arrived at the scene before Lee's death and failed to provide him medical attention or transport him for receipt of necessary care. If plaintiff can prove, as she alleges, that the officers acted in concert pursuant to an agreement and that the failure to provide medical attention was a proximate cause of death, the complaint would support a verdict based on the conspiracy theory.

 Finally defendants request that the allegations of a cover-up be stricken.

While we recognize that proof of a cover-up alone could not be the basis for a claim on behalf of decedent's estate, it does not follow that evidence of a cover-up is not relevant. In *Hampton* the Seventh Circuit confronted similar allegations and held that acts of concealment can be part of the original conspiracy, but plaintiff must show *direct* evidence of an express original agreement among the conspirators to cover up the original wrong. Absent such a showing persons who participate only in the cover-up do not become liable with the original conspirators. *Id.* See also *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). In the instant case, acts of concealment may be relevant if plaintiff can establish a conspiracy between some of the individual defendants with "direct evidence [of] an express original agreement among the conspirators to continue to act in concert in order to cover up . . . traces of the crime after its commission." *Grunewald*, 353 U.S. at 404, 77 S.Ct. at 973.

Moreover, *Hampton* also supports the theory that concealment can amount to a separate illegal conspiracy. 600 F.2d at 622. The cause of action for this conspiracy is not with the deceased but with the surviving dependents. The source of the second conspiracy is an intent to deprive plaintiff of her right to redress and to conceal the true character of the events leading up to the decedent's death. *Hampton*, 600 F.2d at 622. See also *Bell v. City of Milwaukee*, 498 F.Supp. 1339 (E.D.Wisc. 1980). It is essential to note that before plaintiff could establish an actionable "cover-up" conspiracy she would have to prove some harm accrued to her from the illegal act. See *Landrigan v. Warwick* 628 F.2d 736, 742 (1st Cir. 1980). Damages for injury to the deceased are not recoverable on such a theory; it is only the direct harm to the survivors which can be compensated. See *Bell v. City of Milwaukee*, 498 F.Supp. at 1343–44 (Concealment resulting in twenty-year delay in recovery and learning true facts of brother's death is actionable).

For the foregoing reasons the motion to dismiss Count II of the complaint is denied.

*Pendant State Claims*

Counts V through VII state three pendant state claims against the defendants: for wrongful death against the individual officers, wrongful death against the City and Superintendent Brzeczek on a respondeat superior theory, and against the City and supervisory personnel directly for negligently hiring, retaining and entrusting the individual officers. Defendants have moved to dismiss the wrongful death/respondeat superior claim against Superintendent Brzeczek and moved to strike certain portions of the wrongful death claims against the individual officers.

The motion to dismiss defendant Brzeczek from count VI of the complaint is well founded. Under Illinois law, which provides the rule of decision under the pendant claims, liability of a municipal employee is governed by the Illinois Local Government and Governmental Employee Tort Immunity Act, Ill.Rev.Stat., ch. 85 § 2–204 which provides:

> Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment is not liable for an injury caused by the act or omission of another person.

The allegations against defendant Brzeczek in Count VI explicitly state that his actions were at all material times within the scope of his employment. The statute on its face prohibits defendant from being held liable for the acts of another. Therefore the motion to dismiss count VI as to defendant Brzeczek is granted.

The wrongful death count of the complaint purports to be on behalf of decedent's two children, father, five brothers and two sisters. Defendants move to dismiss as to all relatives except the two surviving children. Wrongful death claims under Illinois law are governed by Ill.Rev.Stat. ch. 70 § 2 (1959) which provides in relevant part:

> Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person.

According to the complaint Gary Lee has no surviving spouse. Thus, recovery is limited to and for the benefit of his "next of kin." The term next of kin as used in the statute is meant to be interpreted in its technical sense according to the probate laws of the state. *See Wilcox v. Bierd*, 330 Ill. 571, 162 N.E. 170 (1928), *overruled on other grounds, McDaniel v. Bullard*, 34 Ill.2d 487, 216 N.E.2d 140 (1966); *McDavid v. Fiscar*, 342 Ill.App. 673, 97 N.E.2d 587 (1951). Under the concept of lineal descent which governs the decision as to who is next of kin, *see Rusher v. Smith*, 70 Ill.App.3d 889 (1979); *Jung v. Schafer*, 77 Ill.App.2d 391, 222 N.E.2d 707 (1966), the only persons entitled to recover under the wrongful death claim are decedent's surviving children and his father. Therefore, the motion to strike decedent's other relatives as beneficiaries under Count V is granted.[8]

*Punitive Damages*

In each count of the complaint plaintiff asserts a claim for punitive as well as compensatory damages. The defendant City has moved to dismiss the punitive damage claims against it on both the federal

---

8. Defendants also moved to dismiss on the grounds that the named plaintiff, Cheryl Means, is not the administratrix of Gary Lee's estate and therefore not a proper plaintiff. *See* Ill.Rev.Stat., ch. 70 § 2. Plaintiff did not respond to the legal argument but attached to her brief a duplicate of a certified copy of a Letters of Office from the Clerk of the Circuit Court of Cook County indicating that Cheryl Means is the administrator of the estate of Gary Lee. Defendants did not comment on this document in their reply brief and we assume that it answers the question of whether Cheryl Means is a proper plaintiff, but in any case, at the very least, it raises a contested issue of fact which makes a motion to dismiss inappropriate.

and state claims. The Supreme Court has recently held that municipalities are not subject to awards of punitive damages in § 1983 actions. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Therefore, the claims for punitive damages against the City in counts III and IV are dismissed. It is equally clear that punitive damages are not recoverable under the pendant state claims. The Illinois Tort Immunity Act provides,

> Notwithstanding any other provisions of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly against it by the injured party. Ill.Rev.Stat. ch. 85, § 2–102.

Punitive damages are also precluded in any claim under the Illinois Wrongful Death Act. *See Rusher v. Smith,* 70 Ill.App.3d 889, 26 Ill.Dec. 905, 388 N.E.2d 906 (1979). Accordingly, claims for punitive damages under the pendant state causes of action are likewise stricken.

In sum, our rulings on the various motions to dismiss are as follows: Defendants' motions to dismiss the § 1983 action against the City and supervisory defendants and the §§ 1981, 1983 and 1985 conspiracy action against the individual defendants, are denied. Defendants' motions to dismiss Superintendent Brzeczek from the wrongful death claim in Count VI and to strike plaintiffs other than the next of kin from the wrongful death claim under Count V are granted. Defendants' motions to strike punitive damage claims against the City under the federal claims and against all defendants under the pendant state claims are granted. In all other respects defendants are ordered to answer in 14 days.