Raymond **EKERGREN**, Plaintiff,

v.

**CITY OF CHICAGO, a Municipal Corporation, Jane Byrne, Richard J. Brzeczek, Lawrence Thezan, and Michael Michalek, Defendants.**

No. 80 C 4664.

United States District Court, N. D. Illinois, E. D.

April 30, 1982.

Jay J. Glenn, Chicago, Ill., for plaintiff.

Joseph M. Gagliardo, Asst. Corp. Counsel, Chicago, Ill., for defendants.

---

\* In *Powe v. City of Chicago*, 664 F.2d 639, 649 (7th Cir. 1981), the Seventh Circuit stated that it looked with disfavor on conclusory allega-

MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

Plaintiff Raymond Ekergren seeks damages and injunctive and declaratory relief against defendants the City of Chicago, Police Superintendent Richard Brzeczek, Mayor Jane Byrne, and Police Officers Lawrence Thezan and Michael Michalek. Ekergren alleges that in February, 1980, the individual police officers illegally * searched his residence, seized certain property and arrested him, and that this conduct occurred as a result of a policy or custom of the City and official defendants. He bases his cause of action on 42 U.S.C. §§ 1983 and 1985, as well as on a common law action for false imprisonment and damage to reputation.

Defendants have moved to dismiss the complaint against the City and official defendants and to dismiss the § 1985 allegations, for failure to state a claim. For the reasons that follow the motion is granted.

## § 1985

■ It is well settled that a cause of action for conspiracy under 42 U.S.C. § 1985 requires a showing of "some racial or perhaps otherwise class-based invidiously discriminatory animus," *Griffin v. Breckinridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Ekergren argues that he has identified a class, consisting of those citizens who have been the victims of police misconduct. This argument is circular and begs the question; plaintiff argues in effect that defendants discriminate against victims of police misconduct by subjecting them to police misconduct. As plaintiff's complaint does not allege any racial or class-based discrimination, the claims under § 1985 must be dismissed.

## Claims Against the City

Once again, this court must consider what is now a familiar issue in this district, whether the complaint alleges a culpable municipal policy or custom pursuant to *Mo-*

tions of illegality which do not include the underlying facts rendering police action unlawful.

nell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). See Powe v. City of Chicago, 664 F.2d 639 (7th Cir. 1981); Ragusa v. Streator Police Dept., 530 F.Supp. 814 (N.D. Ill.1981); Williams v. City of Chicago, 525 F.Supp. 85 (N.D.Ill.1981); Spriggs v. City of Chicago, 523 F.Supp. 138 (N.D.Ill.1981); Hamrick v. Lewis, 515 F.Supp. 983 (N.D.Ill. 1981); Villa v. Franzen, 511 F.Supp. 231 (N.D.Ill.1981); Gomez v. City of West Chicago, 506 F.Supp. 1241 (N.D.Ill.1981); and Magaynes v. City of Chicago, 496 F.Supp. 812 (N.D.Ill.1981).

It is now well settled that municipal liability under § 1983 requires an allegation of conduct by an agent of the City that is wrongful under the Constitution or federal law and the existence of a policy or custom that caused the challenged conduct. Powe v. City of Chicago, 664 F.2d 639, 643 (7th Cir. 1981). Here, defendants concede that the complaint alleges unconstitutional conduct by the two officers, but argue that it does not establish either a municipal policy or the element of causation.

In Count I, after recounting in a conclusory fashion the arrest, search and seizure upon which this action is based, Ekergren alleges that in the last ten years certain of the defendants have been found guilty of illegal arrests and searches and seizures in numerous civil rights cases, and that there is an official policy of providing free legal representation to police officers in civil rights cases, although not in other types of cases, and of indemnifying the officers involved for any adverse judgments. He further alleges that this policy promotes continued civil rights violations, presumably on the theory that police officers are less careful in their conduct because they will not incur any personal liability. Finally, he alleges that the supervising defendants ** fail to discipline those officers found guilty of civil rights violations.

In Count II, Ekergren repeats the allegations of Count I and adds the allegation

that in the past ten years, the supervising defendants have failed to provide continuing education on the legal development of civil rights concepts as they apply to police conduct. He asserts that this inaction constitutes official indifference to constitutionally protected rights.

█ The court concludes that Count I defines an official custom or policy with sufficient specificity to survive the liberal standard applicable to a motion to dismiss. The policy alleged is to insulate police officers from the financial consequences of their misconduct while not otherwise disciplining them. The mere existence of a municipal policy is not enough to impose liability under § 1983, however.

Plaintiff must allege that the policy in question caused the constitutional tort. "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution," Monell, supra, 436 U.S. at 690, 98 S.Ct. at 2035 (emphasis added). "Indeed, the fact that Congress did specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent." Id. at 692, 98 S.Ct. at 2036. Accord, Powe v. City of Chicago, 664 F.2d 639, 650 (7th Cir. 1981), where the Seventh Circuit stated that "under Monell, the crucial question is whether the unconstitutional acts complained of were caused by a policy or custom of the municipality." (emphasis in original)

In his complaint, Ekergren alleges that the municipal policy or custom "promotes" or "guarantees the continued deprivation of Civil Rights." Such conclusory allegations of causation, standing alone, are insufficient, at least in cases such as this where the connection between the challenged policy (the indemnification of police officers) and the constitutional torts alleged (unlawful arrests, searches and seizures) is not

---

** Actually, plaintiff does not differentiate between the City, the official defendants and the individual officers, but certain of his allegations

are meaningless unless such a distinction is read into the complaint.

readily apparent. But to establish the causal link, Ekergren further alleges that in the past ten years federal courts have entered "hundreds of judgments finding certain of the defendants guilty of unlawful deprivation of a wide array of rights Constitutionally guaranteed to citizens." (Amended Complaint ¶ 22)

The court presumes that plaintiff would have it infer that the amount of civil rights litigation involving police officers and the number of adverse judgments in such cases proves that the City's policy of indemnification encourages police misconduct. On a motion to dismiss, a plaintiff is entitled to all reasonable inferences flowing from the facts alleged, *Powe, supra*, at 642, but in this instance the inference is not reasonable because there are too many variables involved. For example, the City's policy of indemnification may lead to an increase in the number of lawsuits filed against police officers, because plaintiffs need not worry about whether the individual officers are judgment proof, but this provides no basis for concluding that indemnification increases the probability that policemen will misbehave. The court concludes that plaintiff has not alleged that the identified policy caused the injury of which he complains.

In *Powe v. City of Chicago*, 664 F.2d 639, 651 (7th Cir. 1981), the Seventh Circuit affirmed the conclusion reached by this and other district courts, that "the allegation of a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy." *E.g., Spriggs v. City of Chicago*, 523 F.Supp. 138 (N.D.Ill.1981). Accordingly, this court has considered whether the allegations in the complaint relating to the number of civil rights cases sufficiently identifies a pattern or series of unconstitutional acts to raise the inference that there exists a municipal policy condoning such actions. Initially, the court notes that the number of suits filed by itself is insufficient, as a certain proportion of those suits may be groundless and in others the defendants may prevail. The primary defect with plaintiff's allegations, however, is a lack of specificity; the number of civil rights cases is not relevant, only the number of civil rights cases against Chicago policemen involving unlawful arrests, searches and seizures.

Furthermore, because the area of arrests, searches and seizures includes an almost limitless range of factual situations, the court is of the opinion that even if plaintiff alleged in detail the number of illegal arrest or search and seizure cases in which the plaintiffs prevailed, this would not establish a pattern.

Ekergren would need to identify as well what it was that made those prior arrests and searches and seizures illegal and to show that a similar illegality was involved in his case. Only then could this court determine whether a pattern of police misconduct existed. *Cf. Spriggs, supra*, at 143–44, where this court found a sufficient pattern in allegations that the police regularly use violence in dealing with black suspects. General, unspecific allegations of frequent "illegal arrests" or "illegal searches and seizures," however, fail to establish any pattern. In the absence of a cognizable pattern of misconduct, there is no basis for inferring a municipal policy of condoning police misconduct.

For this same reason, Count II must also fail. In that count, plaintiff alleged a policy consisting of official inaction in the face of a pattern of unconstitutional acts, but the "pattern" alleged is the same one alleged in Count I. As the court concludes that the alleged pattern is not a pattern at all, there can be no liability based on a failure to respond to the pattern.

And even if the allegations did constitute a pattern, in this case the failure to instruct does not give rise to municipal liability because it does not rise to the level of a reckless disregard for the constitutional rights of others. *Cf. Spriggs v. City of Chicago*, 523 F.Supp. 138, 143 (N.D.Ill.1981).

■ Finally, the complaint fails to allege facts showing personal culpability on the part of Brzeczek and Byrne. It merely alleges that Byrne is the Mayor of Chicago and that Brzeczek is the Superintendent of

the Chicago Police Department. The claims against these defendants must be dismissed in the absence of their personal involvement, *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1972), or of a culpable policy for which they might be held responsible.

Accordingly, defendants' motion to dismiss the § 1985 claims and the claims against the City, Byrne and Brzeczek is granted. The claims against the individual police officers remain.