William **TROTTER**, Jr., et al., Plaintiffs,

v.

**CITY OF CHICAGO**, et al., Defendants.

No. 83 C 0353.

United States District Court,
N.D. Illinois, E.D.

Oct. 19, 1983.

Norton R. Goldberg, Chicago, Ill., for plaintiffs.

Robert W. Fioretti, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This civil rights action is before the court on the motion of certain defendants under Rule 12(b)(6), Fed.R.Civ.P., to dismiss the complaint as against them. For the reasons stated below, the court grants this motion as to defendants Byrne, Brzeczek, Nolan, and Rosas, and denies the motion as to defendant City of Chicago. The court strikes the City of Chicago Department of Police from the complaint as a defendant. Defendants Ganison and Carter have answered the complaint, and they do not join in the motion to dismiss.

The thirteen counts of the complaint are allocated among the plaintiffs as follows. Each of the three plaintiffs sues under four theories—42 U.S.C. §§ 1981, 1983 and 1985(3), and Illinois tort law—alleging each theory in a separate count. One additional omnibus count requests punitive damages for all three plaintiffs under all four theories. The complaint is less well organized with respect to the defendants. All eight defendants are named in all thirteen counts, and the complaint gives no indication that some claims might be asserted against fewer than all of the defendants.

For purposes of this motion to dismiss, the allegations of the complaint are taken as true. The gist of the complaint is that defendants Ganison and Carter, police officers, ordered plaintiff Trotter into their squad car without cause, beat him, released him, chased him to the apartment of plaintiff Ruby Thomas (Trotter's cousin), forced their way into the apartment, and inside the apartment beat Trotter and plaintiff George Thomas. Plaintiffs filed a charge against Ganison and Carter with the Police Department's Office of Professional Standards, but the Office concluded that there was insufficient evidence to warrant a finding that Ganison or Carter was guilty of any misconduct. Additional allegations attribute these occurrences to certain policies which the court will discuss below.

### City of Chicago—§ 1983

A municipality may be held liable under § 1983, but such liability may not be predicated on a theory of respondeat superior. A municipality may be held liable only for its own acts, keeping in mind that municipalities act through their agents. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Failure to act to remedy a pattern of unconstitutional behavior may amount to a de facto policy, and may form the basis for municipal liability. *Lenard v. Argento,* 699 F.2d 874, 886 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983).

Questions concerning de facto municipal policies often are considered in light of *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). That case is not directly on point on questions of municipal liability, since it dealt with claims against municipal officials. Nonetheless, *Rizzo* often is considered in discussions under *Monell,* because it addresses allegations of inactivity in the face of a pattern of civil rights violations, and such allegations commonly are asserted against municipalities.

Plaintiffs' complaint alleges that it is the custom and practice of the City, acting through certain of its agents, to deprive blacks and others of their civil rights in the manner in which plaintiffs' rights are alleged to have been violated. (¶ 18.) In the

language of the complaint, the custom or practice is evidenced by:

a) Repeated and notorious incidents of a like kind;

b) Repeated suits of the nature of this suit;

c) Repeated failure to exercise even reasonable care in the selection of persons to be police officers and supervisors;

d) Repeated failure to train and educate police officers;

e) Repeated failure to cull out known offenders among police officers;

f) Repeated failure to discipline offending police officers;

g) Repeated and deliberate failure to find wrongdoing and violations of civil rights on the part of police officers, even when such wrongdoing is as blatant as the facts herein or worse;

h) Repeated instances on the part of all officials involved in such cases, either actively or passively, to cover-up and absolve such wrongdoing on the part of police officers.

(¶ 19.) Plaintiffs allege also that the City encourages misconduct by indemnifying police officers against civil rights judgments. (¶ 20.) Plaintiffs allege that the City's custom or practice "has created a persuasive [*sic*], familiar, and recognizable pattern of conduct on the part of many police officers ... [and] has given rise directly to the constitutional deprivations of the plaintiffs herein." (¶ 22.)

The court has expressed its doubts that an official policy of indemnification causes police misconduct. *Ekergren v. City of Chicago*, 538 F.Supp. 770, 772–73 (N.D.Ill. 1982). On another occasion the court indicated some willingness to scrutinize the sufficiency of bare allegations of de facto municipal policy. *Williams v. City of Chi-*

*cago*, 525 F.Supp. 85 (N.D.Ill.1981). While some of plaintiffs' allegations were present also in *Ekergren* and *Williams*, plaintiffs' allegations, taken as a whole, are more similar to those present in *Spriggs v. City of Chicago*, 523 F.Supp. 138 (N.D.Ill.1981). In that case the court considered allegations of municipal policy similar to those presented here, and the court held that they stated a claim under the principles found in *Monell*, *Rizzo*, and other precedents. The court concludes that plaintiffs have stated a claim against the City of Chicago under § 1983. They allege repeated incidents of police misconduct which violates civil rights, and they allege official action by the City, relevant to such misconduct, that is carried out in a manner that might have caused the alleged misconduct by Ganison and Carter.

The court does not believe that a different result is required by *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir.1981). That case held mainly that even in the absence of explicit allegations of a de facto municipal policy, allegations of several incidents could support an inference of such a policy. *See Means v. City of Chicago*, 535 F.Supp. 455, 461 n. 4 (N.D.Ill.1982) (Marshall, J.). Under this reading, *Powe* is inapplicable to the present case, since plaintiffs explicitly allege the existence of a de facto policy.

■ Some cases impose a requirement that even complaints explicitly alleging de facto municipal policies also include allegations of other incidents. One such case is *Demmler v. City of Chicago*, No. 82 C 2342 (N.D.Ill. Jan. 14, 1983) (McGarr, C.J.), on which the City relies. In *Demmler* Chief Judge McGarr held that when plaintiffs allege a de facto municipal policy based on police misconduct:

in addition to pleading the single allegedly unconstitutional act, the complaint must also contain allegations that envision proof of a pattern of similar incidents of wrongdoing that might evidence

the existence of a bonafide policy, custom or practice unofficially sanctioned by the defendant municipality.

*Id.*, slip op. at 5, *quoting Rivera v. Farrell*, 538 F.Supp. 291, 294 (N.D.Ill.1982) (Aspen, J.). In a footnote to the passage quoted by Chief Judge McGarr, Judge Aspen added:

Consistent with the rather low threshold pleading requirement, particularly in civil rights cases, *Murray v. City of Chicago*, 634 F.2d 365, 367 (7th Cir.1980), a complainant need not plead the specific details of the similar incidents of misconduct that he contends evidence the existence of a de facto governmental policy, custom or practice. *Spriggs v. City of Chicago*, 523 F.Supp. 138, 144 (N.D.Ill. 1981). A complaint is sufficient if it alleges a specific incident of wrongdoing resulting in the deprivation of plaintiff's constitutionally protected interest, the existence of similar such incidents involving either the plaintiff or other similarly situated persons, and a governmental policy or custom pursuant to which such wrongs were perpetrated by governmental employees. *Hamrick v. Lewis*, 515 F.Supp. 983, 986 n. 4 (N.D.Ill.1981). A complaint framed in this manner gives the parties an appropriate basis for initiating discovery directed toward proving or disproving the ultimate question of liability under section 1983. As Professor Moore has stated, the function of pleading under the federal rules "is to give fair notice of the claim asserted so as to enable the adverse party to answer and to prepare for trial...." 2A Moore's Federal Practice ¶ 8.13 (2d ed. 1980).

538 F.Supp. at 294 n. 8. In the present case plaintiffs' complaint gives a general indication of the reasons why they believe a de facto policy exists, as well as some suggestion as to how they will attempt to prove the existence of the policy. Plaintiffs allege that other similar incidents have occurred, and they also allege that the City has encouraged such incidents by inadequate training and disciplinary procedures. (¶ 19.) Plaintiffs thus state a claim under the test advanced by the City.

*City of Chicago—§ 1981*

■ Defendants argue that plaintiffs have not properly alleged race discrimination to support their claims under § 1981, but the court believes that plaintiffs have done so. (¶¶ 3, 13, 18.) Although plaintiffs also ascribe the alleged misconduct in part to their economic status, they sufficiently allege that they were mistreated because they are black. Defendants argue that Ganison and Carter also are black, but this asserted fact does not appear in the complaint. The court will not consider it on this motion under Rule 12(b)(6), Fed.R. Civ.P., and the court expresses no opinion as to the significance of Ganison's and Carter's race.

Plaintiffs note that it has not been decided finally whether the doctrine of respondeat superior may be a basis for liability under § 1981, or whether the *Monell* standard, developed for § 1983 cases, applies also to § 1981 cases. *See Spriggs,* 523 F.Supp. at 145–46 & n. 10. Since the court holds that plaintiffs successfully state a claim against the City under the more exacting *Monell* standard, the court need not, at this stage of the litigation, consider whether plaintiffs can invoke respondeat superior under § 1981.

*City of Chicago—§ 1985(3)*

■ The City apparently challenges plaintiffs' claims under § 1985(3) only on the basis that they do not sufficiently allege a racial or other class-based animus, as required by *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971). (Reply p. 6.) The court rejects this argument, and holds that plaintiffs do allege that a racial animus motivated the City, Ganison, and Carter.

The City has not advanced any other argument against the § 1985(3) claims against it, and in particular the court notes

that the City has not raised the argument that legally it cannot conspire with its own employees. *See, e.g., Stathos v. Bowden,* 514 F.Supp. 1288, 1292–93 (D.Mass.1981). The court expresses no opinion as to whether the City would have prevailed on such an argument.

### Byrne and Brzeczek—§ 1983

■ As noted above, the standard for municipal liability is not identical with the standard for liability of municipal officials. Like municipalities, municipal officials are liable for their own acts and for those of their agents; however, it must be remembered that municipal employees are agents of the municipality, but not necessarily agents of their superiors. So, while *Rizzo* and *Monell* often are discussed together, a *Monell* analysis should not be applied unthinkingly to officials sued in their individual capacity. For such defendants, *Rizzo* is a more appropriate precedent. *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983); *Martin v. County of Kendall,* 561 F.Supp. 726, 728 n. 7 (N.D.Ill.1983) (Shadur, J.). In *Monell,* the court notes, the individual defendants were sued only in their official capacities, and the Supreme Court granted certiorari only on the question of municipal liability. 436 U.S. at 661, 662, 98 S.Ct. at 2020, 2021.

Plaintiffs rely on *Smith v. Jordan,* 527 F.Supp. 167 (S.D.Ohio 1981), which appears possibly to blur this important distinction, attributing to *Monell* holdings as to the liability of superiors, where *Monell* in fact discusses municipal liability. *Id.* at 170. Whatever broad implications the court's discussion may have, its particular holding is completely consistent with this court's analysis. A § 1983 claim was asserted against a sheriff based upon a strip-search policy at the county jail. The court denied the sheriff's motion for summary judgment, stating that he could be held liable if the plaintiff could prove that there was a policy. Consistent with *Rizzo,* the court contemplated proof that the sheriff himself enforced the policy. *Id.* at 171 n. 2.

In this case, analysis of the claim against Byrne and Brzeczek is complicated greatly by plaintiffs' manner of presenting their allegations. Three paragraphs of the complaint alleging a custom or practice ostensibly are directed at all defendants. (¶¶ 18 ("CITY OF CHICAGO and the other defendants herein"), 19 ("the defendants"), 21 ("the defendant, CITY OF CHICAGO, defendant, POLICE DEPARTMENT, and the natural person defendants herein").) Plaintiffs apparently have left it to the court to sort out which allegations might apply to which defendants. It is highly doubtful, for instance, that plaintiffs intend to allege that defendants Ganison and Carter have a policy evidenced by a failure to discipline offending police officers. (¶ 19f).

■ In the case of defendants Byrne and Brzeczek, too, a literal reading of the complaint yields several incongruities. To begin with, it is improper for plaintiffs to allege, without more, that the individual defendants have performed any act "by and through the actions of the officers of the defendant POLICE DEPARTMENT." (¶ 18.) Supervising police officers and patrolmen are agents of the City, and the City may be held liable for their acts (although not, for § 1983 purposes, on a theory of respondeat superior), but it does not follow that police department employees are agents of Byrne and Brzeczek personally. Absent some allegation supporting an inference of such agency, the court must reject any allegation that an individual defendant has acted through police officers. *Rizzo* stands for the proposition that municipal officers may be held liable only for their own acts. 423 U.S. at 377, 96 S.Ct. at 607.

Plaintiffs' allegations relating to failure to train and educate police officers cannot properly be understood as applying to Byrne and Brzeczek. (¶ 19d.) It was not Byrne's job, as Mayor, to train or educate police officers, and the court doubts that it was Brzeczek's job to do so. A proper allegation, if it could be made in good faith,

would give some indication how these defendants personally were responsible for poor police training, such as by alleging that Brzeczek knowingly chose an unqualified person to set the police training curriculum. The City, by contrast, arguably could be charged with poor training merely on the basis of an inadequate official curriculum, since the officials prescribing such curriculum presumably would be acting on the City's behalf.

Plaintiffs' allegations of a custom or policy, to the extent they are asserted against Byrne and Brzeczek, clearly rest on the incorrect assumption that individual defendants can be charged with the acts of their subordinates. Plaintiffs allege "callous and reckless indifference to, and disregard of such incidents on the part of the natural person defendants herein," concluding that the alleged pattern of incidents, coupled with such indifference and disregard, "amounts to an official policy of the defendant, CITY OF CHICAGO, defendant, POLICE DEPARTMENT, and the natural defendants herein." (¶ 21.) This passage arguably charges the individual defendants with personal involvement, but it makes the same allegation against the City, the Police Department, and the individual defendants all in one breath; so, the allegation apparently is based on the incorrect assumption that what amounts to a City policy must also amount to personal action by Byrne and Brzeczek. The court notes that it is not inclined to give such scattershot pleading the same liberal construction it might extend to a more carefully drafted complaint. The court holds that plaintiffs do not state a claim against Byrne or Brzeczek under § 1983.

### Byrne and Brzeczek—§ 1981

The court holds that plaintiffs have not alleged any personal involvement on the part of Byrne or Brzeczek that would support a claim under § 1981. As noted above, the question of respondeat superior liability under § 1981 has not been settled.

Plaintiffs' memoranda do not appear to argue that the individual defendants could be held liable on a respondeat superior theory, and they have cited no case which would approve such liability. Unlike the City, Byrne and Brzeczek did not occupy the position of employer with respect to Ganison and Carter, and could not be liable vicariously for their actions. *Preston v. City of York*, 452 F.Supp. 52, 54 (M.D.Pa. 1978).

### Byrne and Brzeczek—§ 1985(3)

Counts III, VII, and XI incorporate the allegations of Count I, and then allege:

That because of the foregoing, the defendants have conspired to interfere with, and deprive citizens and others of their civil rights and privileges . . . .

(¶ 2.) As the court reads this allegation, it merely asserts that the "foregoing" paragraphs of the complaint sufficiently allege a conspiracy. The court does not read this paragraph as alleging personal involvement beyond what might be alleged in the other counts. Since the court has held that plaintiffs allege no personal involvement on the part of Byrne or Brzeczek in those other counts, this conspiracy allegation does not cure the insufficiency of plaintiffs' claims against these defendants.

### Nolan and Rosas—§ 1983

Nolan and Rosas are alleged to have been Administrators of the Office of Professional Standards. (¶ 3.) Plaintiffs allege that Nolan and Rosas signed the letter informing plaintiffs of the Office's determination with respect to their complaint. (¶ 16; Ex.D.) The complaint appears to assert claims against Nolan and Rosas under all theories, including assault, battery, and false imprisonment, but plaintiffs' surreply takes the position that Nolan and Rosas are not sued under the state-law theories. Plaintiffs' surreply also asserts that Nolan's and Rosas' liability stems from their "utter failure to find fault with

the defendant police officers." (Surreply p. 2.) Plaintiffs argue that this handling of their charge "was part of a significant contribution to the pattern of reckless abuse of citizens [*sic*] rights as charged in the Complaint." (*Id.*)

The court rejects plaintiffs' arguments. First, the complaint does not really allege any wrongdoing on Nolan's or Rosas' part. The complaint does not allege that the determination was made in bad faith, or that there was any procedural deficiency in the processing of the complaint, except that the Office took a year to reach its determination. (¶ 16.) Even taking all of plaintiffs' allegations of police misconduct as true, for purposes of this motion, those allegations support at most an inference that Nolan and Rosas made an erroneous determination. The allegations entitle plaintiffs to no greater inference, and an erroneous determination would not amount to a violation of constitutional rights.

Second, and equally important, plaintiffs' allegations do not support an inference of any causal relation between Nolan's and Rosas' handling of their complaint and any violation of plaintiffs' rights or injury to them. Plaintiffs' memoranda argue only that the handling of their complaint contributed to the general pattern of abuse alleged to have caused the violation of plaintiffs' rights. It hardly needs to be pointed out that the handling of plaintiffs' complaint occurred after the alleged incident, and could not possibly have caused it. The suggestion of a causal relation being completely implausible, plaintiffs' claim must fail. *Cf. Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir.1980) (unsuccessful conspiracy to cover up excessive use of force did not itself violate plaintiff's rights, although some measures taken in furtherance of conspiracy might constitute independent violations). Plaintiffs thus fail to state a claim against Nolan and Rosas under § 1983.

### Nolan and Rosas—§ 1981

■ As noted above, plaintiffs do allege a certain amount of personal involvement on the part of Nolan and Rosas, but they do not allege sufficiently that that personal involvement was wrongful. Conceivably, the Office of Professional Standards investigation may have constituted "proceedings for the security of persons and property." § 1981. Even under this view, which the court accepts only *arguendo*, plaintiffs' § 1981 claim against Nolan and Rosas is insufficient, since plaintiffs allege at most that Nolan's and Rosas' determination was erroneous.

### Nolan and Rosas—§ 1985(3)

Plaintiffs do allege a certain amount of personal involvement on the part of Nolan and Rosas, and, since Nolan and Rosas signed the same letter, it is plausible to assume a certain amount of cooperation between them. Nonetheless, plaintiffs' allegations do not support an inference that Nolan or Rosas conspired with the other, or with anyone else, to wrong plaintiffs in any way. Plaintiffs do not allege wrongful conduct on the part of Nolan or Rosas, and they do not allege plausibly that Nolan's or Rosas' conduct caused them injury or deprived them of their rights.

### Police Department

Plaintiffs name as a defendant "City of Chicago Department of Police." Defendants contend that the Department of Police is not a suable entity, and plaintiffs do not respond to this contention. Accordingly, the Department of Police is stricken from the complaint as a defendant. *See Jordan v. City of Chicago, Department of Police*, 505 F.Supp. 1, 3–4 (N.D.Ill.1980).

### State-law claims

■ The court dismisses all federal claims asserted against defendants Byrne, Brzeczek, Nolan, and Rosas. It generally is not proper for federal courts to continue their exercise of pendent jurisdiction over

state-law claims when all federal claims are dismissed before trial. The court finds no valid reason for retaining the pendent claims against these defendants, so it dismisses them without prejudice.

*Conclusion*

Defendants Ganison, Carter, and the City of Chicago remain in the case. It appears to the court that plaintiffs' case against the City will be vastly greater in scope than their case against Ganison and Carter. For instance, plaintiffs allege inadequate training and disciplinary procedures. Proving up such allegations might require comparison of Chicago's programs with those of other large cities. Possibly, plaintiffs' case would have to include expert witnesses on the administration of police departments. Proof of official cover-ups of police misconduct, as alleged, might even require minitrials on other instances of misconduct. The court is concerned that this litigation could become unmanageable. As a first step in keeping this case under control, at the next status hearing the court will expect plaintiffs' counsel to report on his plans for taking discovery necessary to his case against the City.

The court grants defendants' motion in part and denies it in part. Counts I through XIII are dismissed as against defendants Byrne, Brzeczek, Nolan, and Rosas; of those counts, Counts IV, VIII, and XII are dismissed without prejudice, for want of subject-matter jurisdiction. The City of Chicago Department of Police is not a suable entity, and it is stricken from the complaint as a defendant.

It is so ordered.