**Richard CARR, Plaintiff,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 85 C 6521.**

United States District Court,
N.D. Illinois, E.D.

March 14, 1986.

Sidney I. Schenkier, Robert S. Markin, Jenner & Block, Chicago, Ill., for plaintiff.

James D. Montgomery, Corp. Counsel, Stanley J. Sacks, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Richard Carr ("Carr") has sued the City of Chicago ("City") and several other defendants under 42 U.S.C. § 1983 ("Section 1983") and state common law, alleging police harassment. City now moves under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss Carr's Complaint (the "Complaint").[1] For the reasons stated in this memorandum opinion and order, that motion is denied in part and is deferred in part pending the submission of further information.

### Facts [2]

On May 23, 1982 a City police officer arrested Carr without probable cause at a theatre (¶ 15). Carr was charged with disorderly conduct and was held for six to seven hours before he posted a $50 bond (id.). When the complaining witness failed to appear in court, the disorderly conduct charge was dismissed (id.).

On August 23, 1982 a City police officer arrested Carr again (¶ 16). Carr was charged with possession of marijuana and

---

**1.** Carr submitted the Complaint pro se and in forma pauperis. This Court has appointed counsel to represent him pro bono publico. Special thanks are due to Sidney Schenkier, Esq. and Robert Markin, Esq. for serving in that capacity.

**2.** For purposes of the motion to dismiss, this Court has accepted as true the Complaint's well-pleaded factual allegations, drawing all reasonable factual inferences in Carr's favor. *Wolfolk*

was held for six to seven hours before he posted a $100 bond (id.). That charge was also dismissed when the complaining witness failed to appear in court (id.).

On seven other occasions (two more in 1982, two in 1983, two in 1984 and one in 1985) a City police officer or theatre security personnel arrested Carr (¶¶ 17–23). In every instance:

1. Carr was charged with disorderly conduct.

2. He was detained for several hours before posting bond.

3. All charges were dismissed when the complaining witness failed to appear.

In July 1985 Carr filed this action against City.[3] He had never filed a notice of claim with City (Meyer Aff.).

### City's Contentions

City advances two arguments in support of its motion to dismiss the Complaint:

1. Carr's Section 1983 claim assertedly fails to allege an official "policy" or "custom" of City.

2. Carr's failure to file a notice of claim against City under Ill.Rev.Stat. ch. 85, ¶¶ 8–102 and 8–103 is said to bar his state law claims.

Each issue can be dealt with in relatively brief compass.

### Carr's Section 1983 Claim

■ *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978) teaches a municipality's liability under Section 1983 cannot rest solely on the operation of respondeat superior principles:

---

*v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). All citations to the Complaint will simply take the form "¶ —."

**3.** Carr initially sought punitive damages against City. Carr Mem. 3 n. * abandons that claim (see *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). Accordingly this opinion need not address City's arguments on that issue.

We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Strauss v. City of Chicago,* 760 F.2d 765, 768–69 (7th Cir.1985) identified the minimum allegations required to support a Section 1983 claim against a municipality:

The existence of a policy that caused a plaintiff's injury is an essential part of Section 1983 liability, so that some fact indicating the existence of some such policy must be pled. Without some evidence apart from the fact of employment, regardless how slight, that a policy causing plaintiff's injury might exist, the plaintiff simply cannot proceed in court against the municipality.

\*     \*     \*     \*     \*     \*

In *Powe* [*v. City of Chicago,* 664 F.2d 639, 651 (7th Cir.1981)] we stated that "the allegation of a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy."

\*     \*     \*     \*     \*     \*

We do not mean to imply that a plaintiff must plead in greater detail, but merely that the plaintiff must plead some fact or facts tending to support his allegation that a municipal policy exists that could have caused his injury.

City urges Carr has failed to allege any facts in support of his claim it had a policy of encouraging illegal arrests and detentions. That position must rest on the premise that Carr's nine arrests were unconnected incidents and hence not part of a municipal policy favoring illegal arrests. But Carr's recitals do not suffer from the vice of generalization found inadequate in *Ekergren v. City of Chicago,* 538 F.Supp. 770, 773 (N.D.Ill.1982):

[Plaintiff] would need to identify as well what it was that made those prior arrests and searches and seizures illegal and to show a similar illegality was involved in his case. Only then could this court determine whether a pattern of police misconduct existed.

Carr *has* alleged in *Ekergren* terms:

1.  a series of unlawful arrests; and

2.  a similar illegality involved in each instance.

With all reasonable inferences drawn in Carr's favor, such allegations do call for further inquiry—or in the terms used by the Section 1983 cases, could be stretched into an inference of municipal "policy." *Powe,* 664 F.2d at 651. City's Mem. 5 suggestion that Carr must point to a series of acts directed against persons other than Carr himself finds no support in *Monell.* Indeed *Powe,* 664 F.2d at 651 found the Section 1983 plaintiff there had created the inference of a municipal policy by alleging he was himself the victim of a series of unlawful arrests.

Having said all that, however, this Court is constrained to issue a caveat. There is an unfortunate tendency on both sides of the *Monell* issue to fall victim to the tyranny of labels:

1.  Defense counsel for municipalities frequently try to dismiss claims where there is no allegation of repeated activity, even though a single act by a sufficiently high-ranking person is enough to make "policy" in *Monell* terms. Those misguided efforts must be rejected; see *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 282–83 (7th Cir.1985); *Rateree v. Rockett,* 630 F.Supp. 763, 772–73 & n. 14 (N.D.Ill. 1985).

2.  Plaintiffs' counsel just as frequently try to make the quantum leap from several acts by low-ranking personnel to a "policy" of the municipal entity, which is after all the party sought to be held liable. Those equally misguided efforts ignore the fact that agency concepts for

the fixing of liability are far from irrelevant to Section 1983.[4]

That latter point is one Carr and his appointed counsel must reckon with. It will require something more than the acts of individual police officers (even in quantity) to establish City's Section 1983 responsibility for those acts.[5] This opinion need not now pause to decide the questions of what Carr needs to establish a prima facie case or to shift the burdens of production and persuasion—a Rule 12(b)(6) motion is not the occasion for that. But Carr must be aware that his current survival at the pleading stage is only the first and not the last of the hurdles he faces.

### Carr's State Law Claims

Complaint Count II seeks recovery under several state-law theories:

1. false arrest and imprisonment;
2. assault and battery; and
3. malicious prosecution.

City contends all those claims are barred by Carr's failure to comply with the notice provisions of Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Act"), Ill.Rev.Stat. ch. 85, ¶¶ 1–101 to 10–101.[6] Act §§ 8–102 and 8–103[7] provide:

> *Section 8–102.* Within 1 year from the date that the injury or cause of action, referred to in Sections 8–101, 8–102 and 8–103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the

scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, signed by himself, his agent or attorney, giving in substance the following information: the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any.

> *Section 8–103.* If the notice under Section 8–102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing.

City's Meyer Aff. establishes Carr never served the notice required by Act § 8–102, and Carr does not dispute that fact. Instead Carr argues Illinois case-law has tempered the statute in two respects:

1. Filing a lawsuit on the claim within the statutory one-year period, even without the statutory notice, satisfies the Act.

---

4. This principle of course is quite different from grounding Section 1983 liability on the expansive respondeat superior principles that inform ordinary tort liability (a result forbidden by *Monell*).

5. This was the intended thrust of this Court's dictum in the course of its July 30, 1985 memorandum order, which initially denied Carr leave to file in forma pauperis: *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985) makes it plain that more is required to sue a municipality under Section 1983 than Carr has set forth.

6. City has submitted materials external to the Complaint on its motion to dismiss the state law claims. As permitted by the last sentence of Rule 12(b), this opinion treats the motion as one for partial summary judgment under Rule 56.

7. Though this opinion's citation to the official statutes has followed their recently-adopted "¶" format, citations to individual sections of the Act adhere to the General Assembly's continued (though inconsistent) "§" usage.

2. Statutory notice is waived entirely within the limits of any insurance policy issued to a municipality covering the alleged injury.

■ As to the first point, the Illinois Supreme Court has indeed so held in *Dunbar v. Reiser,* 64 Ill.2d 230, 237, 1 Ill.Dec. 89, 91–92, 356 N.E.2d 89, 91–92 (1976). But only one of the false arrests alleged in the Complaint (that on April 4, 1985 (¶ 23)) occurred less than a year before suit was filed. Hence this lawsuit itself satisfied Act 8–102 as to only that incident. Thus unless Carr can establish a full waiver of Act § 8–102, he cannot sue on the other arrests under state law.

*Collins v. School District No. 189, St. Clair County,* 115 Ill.App.3d 100, 102, 70 Ill.Dec. 914, 916, 450 N.E.2d 387, 389 (5th Dist.1983) is typical of the cases confirming notice under Act § 8–102 is waived to the extent claims are covered by an insurance policy issued to a municipality.[8] But City says Carr cannot rely on that waiver doctrine for two reasons:

1. Carr failed to allege the existence of an insurance policy.

2. Williams Aff. ¶¶ 2–3 establishes City's liability insurance does not cover the types of claims asserted by Carr.

Carr retorts Act § 8–102 creates an affirmative defense to liability, as to which City bears the burden of establishing its applicability. From that premise Carr reasons he had no duty to raise the possible existence of an insurance policy until City first raised the affirmative defense of no notice under Act § 8–102.

■ Carr is right on that score. Notice pleading under the Rules is designed to inform a defendant of a plaintiff's claim. Because City (and not the typical claimant contemplating suit against City) knows whether it has insurance covering the alleged injury, no purpose is served by re-

quiring Carr to allege the existence of such coverage. Nothing in Act §§ 8–102 or 9–103(c) requires a plaintiff to include such an allegation in his complaint. Carr's failure to allege City's insurance coverage does not foreclose his reliance on the waiver doctrine developed by Illinois courts.

■ That does not get Carr home free, however. Act § 9–103(c) provides for the insurer's waiver only "within the limits of said policy...." Illinois courts construe the scope of the waiver coextensively with the type and amount of damages the insurance policy covers. *Beckus v. Chicago Board of Education,* 78 Ill.App.3d 558, 561, 33 Ill.Dec. 842, 845, 397 N.E.2d 175, 178 (1st Dist.1979). As this Court concluded in *Franceshini v. Bettilyon,* 587 F.Supp. 906, 909 (N.D.Ill.1984):

> Accordingly the existence of an insurance policy that does not cover the claimed damages does not constitute a waiver of notice.

Here City's Williams Aff. ¶¶ 2–3 says City's limited insurance coverage does not extend to the type of claim asserted by Carr. Because City did not tender that affidavit until it filed its reply memorandum, Carr must now have "the opportunity to respond in kind." *Franceshini,* 587 F.Supp. at 909.

Accordingly this Court will defer its decision on the waiver issue until Carr has had the opportunity to conduct reasonable discovery and file any opposing affidavits as to the scope of City's insurance coverage. In the meantime this action will proceed on the other surviving claims.

### Conclusion

City's motion to dismiss Carr's Section 1983 claim is denied. City's motion to dismiss Carr's state-law claims is treated as

---

8. *Collins* and other like Illinois cases rely on Act § 9–103(c) to justify that conclusion:

> Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the

limits of said policy by reason of the non-liability of the insured public entity for the wrongful or negligent acts of itself or its employees and its immunity from suit by reason of the defenses and immunities provided in this Act.

one for summary judgment, but this Court's ruling on that issue is deferred pending submission by Carr of further information.