Leroy DAVIS, Appellant,

v.

CITY OF KINLOCH, et al.,
Respondents.

No. 52408.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 24, 1988.

Eugene H. Buder, St. Louis, for appellant.

Ronald G. Sherod, St. Louis, for respondents.

KAROHL, Presiding Judge.

Plaintiff, Leroy Davis, appeals after a verdict was directed in favor of all defendants at the close of the plaintiff's evidence. During the plaintiff's case, by leave and by consent, defendant City of Kinloch offered testimony of one witness and entered two exhibits in evidence.

The case was tried on Plaintiff's Third Amended Petition. Count I alleged a claim under 42 U.S.C. Sections 1983–1988. Count I charged all defendants with conduct committed under color of state law which deprived plaintiff of rights, privileges or immunities secured by the United States Constitution. Specifically, Count I alleges that defendants, on November 3, 1978, entered plaintiff's place of business, a restaurant, located in said City of Kinloch, "tore up a part of the premises and used riot guns to cause customers of plaintiff to leave said business." It alleges that on November 12, 1978, police officers including defendant Reed and others, at the direction of all individual defendants again entered plaintiff's place of business and prevented plaintiff from operating, arrested plaintiff without probable cause, otherwise harassed plaintiff in the operation of said business, and thereafter falsely charged plaintiff under state law, all of which charges were subsequently dismissed. Count I further alleges the city, over the signature of defendant and then Mayor Wells, speaking for himself and the Board of Aldermen, revoked plaintiff's license to operate said restaurant pending disposition of charges. It also alleged that the mayor and defendant police officers were acting as agents of the city in carrying out a policy of the city to deprive plaintiff of protected rights of equal protection, his liberty, his right to be free from unreasonable searches and sei-

zures, his right not to have property taken for public use without just compensation, all guaranteed by federal constitutional provisions. Finally, Count I alleges that the defendant mayor and police officers were acting as agents of the city "in carrying out a policy of said city to deprive plaintiff of said rights." Plaintiff claimed actual damages for false arrest, damage to his restaurant, loss of business and loss of use of his property. Plaintiff claimed punitive damages because the alleged acts were intentional, unlawful and committed with malice.

Count II adopts the allegations made in Count I and alleges "[t]he conduct of Defendant Wells and the Kinloch Board of Aldermen, as described in paragraph 9 of Count I, amounted to a bill of attainder, as prohibited to the states by the Constitution of the United States, Article I, Section 10, in that it imposed severe penalties on plaintiff, as set out in Count I, summarized in paragraph 19 of Count I, by 'legislative action rather than judicial action.'" On this Count, plaintiff requested actual and punitive damages.

Plaintiff testified that he lived in Kinloch nearly all of his life, 52 years. He had served the city as an alderman, was formerly the Police Commissioner and an unsuccessful candidate for mayor. In October 1973, he acquired a "general purpose building" which he subsequently operated as Davis Supper Club. In November 1978, he possessed three licenses issued by the City of Kinloch which permitted him to rent the building to individuals and associations for social functions such as wedding receptions and political meetings.

On November 2, 1978 plaintiff was a principal in a lawsuit filed by plaintiffs as taxpayers against Mayor Wells for an accounting from the city regarding the disposition of a number of parcels of land. According to his testimony, the actions of defendants, beginning the day after the suit was filed, were motivated in reaction to the lawsuit—"When that suit was filed that's when they started raiding my place continuously and took my license. They had been in there before but never did take

my license, nothing like that. Only when that suit was filed in November, 1978."

Plaintiff also testified that he was arrested sixteen or seventeen times but never tried and never convicted on any of the charges.

On cross-examination by counsel for defendant city, plaintiff acknowledged receiving a letter dated November 22, 1978, signed by defendant Joseph L. Wells, as mayor. The letter was referred to in plaintiff's petition. It was offered by defendant city and received in evidence. The subject matter of the letter is the crux of plaintiff's claim on Count II that defendant city enacted a bill of attainder prohibited by Article I, Section 10, of the United States Constitution. The relevant provisions of the letter are: "The Board of Aldermen met in executive meeting on November 18, 1978. Your supper club was one of the items discussed. It was by a unanimous vote that the Board of Aldermen revoked your city license effective immediately. The reissuance of your license will be pending the disposition of the charges on the warrants that were issued against you. ... It is incumbent upon us as City Fathers to uphold the law that we took an oath to uphold and if the state has issued warrants, then we feel it is our duty to see to it that the business does not operate until the matter is cleared up." No other proceedings were instituted to terminate the licenses.

Plaintiff also testified to damages which occurred when police officers of the city came to his place of business on November 3, 1978 and November 12, 1978. On those occasions, plaintiff offered the officers keys to locked doors but the officers elected to destroy the doors. They also took waste baskets full of property. In addition, plaintiff testified that defendant Reed, many times, told plaintiff, "You might not get convicted, but I'll get you charged." Plaintiff conceded that defendant Patton was not present on November 3, 1978 or November 12, 1978.

Near the end of plaintiff's evidence, the trial court observed, "and I don't have any problem with the City of Kinloch being in this lawsuit. I don't have any problem

with Reed being in the lawsuit. But I've got some substantial problems with Wells and Patton being in the lawsuit because there has been no evidence whatsoever to establish that they are in any way responsible for any violation of any kind of Mr. Davis's civil rights."

We review a directed verdict at the close of plaintiff's case. On appeal, plaintiff is entitled to the most favorable view of the facts and inferences in support of his alleged claims. *Duke v. Missouri Pacific Railroad Co.*, 303 S.W.2d 613, 616 (Mo. 1957). Such verdict at the close of plaintiff's case is a drastic remedy and should be granted only when all the evidence and reasonable inferences to be drawn therefrom are so strongly against plaintiff that there is no room for reasonable minds to differ. *Hercules Construction Co. v. C.J. Moritz Co.*, 655 S.W.2d 779, 785 (Mo.App. 1983).

 Count I alleges a cause of action under Title 42 U.S.C. Section 1983. Municipalities and other local government units are included among those persons to whom Section 1983 applies where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611, 635 (1978). However, a municipality may not be held liable solely under the theory of respondeat superior. *Id.* at 691, 98 S.Ct. at 2036. A governmental entity is or may be liable under Section 1983 only when the entity itself is a "moving force" behind the deprivation of rights. *Id.* at 690–92, 98 S.Ct. at 2035–36; *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed. 2d 114 (1985). The elements of such claim are: (1) that the conduct complained of must have been committed under color of state law; and, (2) that the conduct must have deprived a person of rights, privileges or immunities secured by the United States Constitution. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13 68 L.Ed. 2d 420, 428 (1981).

Applying the proper standard of review to the facts under the law relating to Section 1983, we find the court erred in directing a verdict for defendants City of Kinloch, Wells, and Reed. We affirm the directed verdict in favor of defendant Patton because there was no evidence that Patton, as a police officer for the city, was present on either November 3 or November 12, 1978 or that he was acting in furtherance of a known policy of the city to deprive plaintiff of his constitutionally protected rights.

The evidence consisting primarily of the testimony of plaintiff Davis and the letter of Mayor Wells, would support a finding that the City of Kinloch, defendant Mayor Wells and Chief of Police Reed, acting under color of the provisions of state statute and local ordinance subjected plaintiff to deprivation of rights, privileges and immunities.

Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, sued in equity, or other proper proceeding for redress...."

 A due process claim under Section 1983 requires a life, liberty or property interest subject to due process protection. *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420, 430 (1981). Plaintiff's evidence supports a deprivation of tangible personal property and excessive force in the destruction of his real estate. The statute is intended to protect these property rights by requiring due process. In addition, plaintiff testified that the actions of the city and the individual defendants deprived him of the enjoyment of the gains of his own industry by destroying the economic value of his building. He further testified that his licenses to do business were withdrawn without charge

or judicial hearing. The United States Supreme Court has held that where there is a license involved in the livelihood of a person it may not be summarily taken without a prior hearing. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). It has been held in Missouri that a city may not arbitrarily deny a restaurant license without adequate safeguards because such denial constitutes a denial of due process of law as prohibited by state and federal constitutions. *State ex rel. Jimmy's v. City of Independence,* 527 S.W.2d 11, 13–4 (Mo. App.1975). In addition, plaintiff alleged and testified in support of his allegations that under the policy of the city and by the conduct of the individual defendants he was arrested on many occasions, charged but never prosecuted. This evidence and the reasonable inferences flowing from this evidence established a liberty interest protected by Section 1983.

■ Defendant city argued to the trial court in support of its motion for summary judgment, the grounds for which were incorporated in the motion for directed verdict, that adequate post deprivation remedies will satisfy due process requirements. This has been applied to deprivation of a property interest but not to a life or liberty interest. Further, the authorities cited in support of this proposition depend upon the existence of exigent circumstances requiring quick and summary action followed by a hearing. Thus, where a government seizes unwholesome food or drugs, a post seizure hearing will satisfy due process. The requirements of due process are satisfied because this procedure is a mere postponement of a required hearing. *See, Parratt v. Taylor,* 451 U.S. 527, 538, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981). However, in the absence of an emergency condition the existence of a subsequent hearing will not satisfy due process requirements where property deprivation is involved. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In the present case the court granted defendant's motions for directed verdict at the close of the plaintiff's case, except only for brief evidence offered by defendant city as an agreed interruption. Defendants were not offered an opportunity to prove and did not demonstrate any exigent conditions requiring summary seizure. Even if such evidence exists the manner in which the property was seized in police raids would remain together with the deprivation of license and deprivation of liberty issues. Further, no subsequent hearings to determine or justify the actions and conduct of defendants were planned or held.

The requirement of Section 1983 that defendants were acting under color of law is not seriously contested. The motions for directed verdict adopted the grounds stated in defendant City of Kinloch's motion for summary judgment. The city acknowledged in its motions that it was acting on the authority of Sections 94.270 and 79.450 RSMo 1978. Further, the letter of the city by its terms purports to be an act under the authority of law.

■ The testimony of plaintiff Davis also supports a finding that plaintiff's rights under Section 1983 were violated by defendant Reed acting as a police officer. A policeman may arrest on probable cause but may be liable for the manner in which a search and seizure is conducted if it is unreasonably intrusive or abusive. *See, Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1, 7–8 (1985). There was no apparent reason to kick open doors or break locks where keys were offered. Nor was there any apparent reason to tear down walls, break pictures or seize glasses and furniture which had no apparent evidentiary value and were never used in evidence in any legal proceeding.

■ Collectively, the evidence, consisting of the stated policy of the city and the contemporaneous raids with the application of excessive and unnecessary force, arrests and unprosecuted charges, satisfy the requirements of a cause of action and proof thereof. *See, Carr v. City of Chicago,* 630 F.Supp. 932, 934–935 (N.D.Ill.1986).

■ In reversing the directed verdict on Count I we limit the holding to plaintiff's claim against the city for actual damages. Punitive damages against municipalities are not authorized. *Kentucky v. Gra-*

*ham,* 473 U.S. at 167, fn. 13, 105 S.Ct. at 3106, fn. 13, citing, *Newport v. Facts Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). This rule of law has been acknowledged by the plaintiff. However, punitive damages may be recovered from an official sued in his personal capacity. *See, Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

▇ We also hold that the court erred in directing a verdict on Count II which alleges a cause of action under Title 42 U.S.C. 1983 and specifies an act of the City of Kinloch as a prohibited bill of attainder. Article I, Section 9 of the United States Constitution provides, "No bill of attainder or ex post facto law shall be passed." Article I, Section 10 provides "[n]o state shall ... pass any bill of attainder, ex post facto law,...." These provisions are discussed in a book, The Constitution Of The United States, 1972 revision, Congressional Research Service, Library Of Congress, at pages 365–366. It is there written "the prohibition embodied in this clause [Article I, Section 10] is not to be strictly and narrowly construed in the context of traditional forms but is to be interpreted in accordance with the designs of the framers so as to preclude trial by legislature, a violation of the separation of powers concept. (*United States v. Brown,* 381 U.S. 437, 442–446, 85 S.Ct. 1707, 1711–1713, 14 L.Ed.2d 484 (1965)). The clause prohibits all legislative acts, 'no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial'. (*United States v. Lovett,* 328 U.S. 303, 315, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252 (1946))." In part, we have borrowed from the book without quotation.

The letter exhibit signed by Mayor Wells constitutes proof from which the trier of fact in the present case could find that the city enacted a bill of attainder at a meeting in November, 1978. It deals only with plaintiff. *See, United States v. Lovett,* 328 U.S. 303, 315, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252, 1259 (1946). Such acts have been held to be a bill of attainder. *Crain v. City of Mountain Home, Arkansas,* 611 F.2d 726 (8th Cir., 1979). In *Crain,* it was said, ".. legislation which inflicts a deprivation on named or described persons or groups constitutes a bill of attainder whether its aim is retributive, punishing past acts, or preventive, as in this case, discouraging future conduct." *Id.* at 729. The legislative act of the City of Kinloch was a punitive act against a named person which denied defendant the benefit of due process in the forum of a hearing supported by the right of appeal.

On appeal, plaintiff requests consideration of the allowance of an attorney's fee under 42 U.S.C. Section 1988. This relief was requested in the petition. Because the court granted a directed verdict there was no opportunity to consider such request. On remand the question of attorney's fees for trial counsel and appellate counsel may be considered on the authority of 42 U.S.C. 1988. The fee issue was discussed and fees were allowed in *Crain v. City of Mountain Home, Arkansas,* 611 F.2d at 730.

We reverse and remand for a new trial against defendants City, Wells and Reed. The judgment in favor of defendant Patton is affirmed. The question of attorneys fees for the trial and this appeal and retrial will be considered on retrial.

SMITH and KELLY, JJ., concur.